OLIVER BIONDI, Administrator of Estate of BATISTA BIONDI, v. CENTRAL COAL & COKE COMPANY, Appellant.—9 S. W. (2d) 596.

Court en Banc, October 2, 1928.

*Walter C. Goodson* for appellant.

*Shelton & Shelton* and *Lacy & Edwards* for respondent.

BLAIR, J.—This is an appeal from the Circuit Court of Macon County in an action in damages for the death of respondent's decedent on April 12, 1925, alleged to have been caused by the negligence of appellant. The verdict was for respondent in the sum of $3500. An appeal to the Kansas City Court of Appeals was granted from the judgment entered on such verdict. There the judgment was affirmed in an opinion written by "GERMAN, Special Judge," in which ARNOLD, J., concurred; BLAND, J., dissented in separate opin-

ion; TRIMBLE, P. J., was absent. Thereafter the case was certified to this court because one of the judges deemed the opinion and decision of that court in conflict with the decision of this court in State ex rel. v. Ellison, 270 Mo. 645, 195 S. W. 722. The case is therefore here for appellate review, just as if the appeal had been granted to this court in the first instance.

We quote from the majority opinion as follows:

"After reciting the facts showing the representative capacity of the plaintiff; the corporate existence of the defendant; that it was operating the mine in question under the 'room and pillar plan;' that the mine consisted of a vertical shaft driven in the ground, intersecting with horizontal beds or veins of coal, from the bottom of which shaft, entries for passageways and air courses are driven and multiplied, as occasion demands; and that passageways, known as 'room-necks,' connect the entries with the rooms where the coal is actually being mined, the petition charged it to be the duty of defendant to furnish deceased with a reasonably safe place in which to work and with a reasonably safe passageway to and from his working place in the mine, and to use ordinary care to keep the roofs of its room-necks, passageways and entries where deceased was compelled to be, reasonably free from loose and overhanging rock. That defendant failed in the performance of these duties, had failed to inspect the roof of the passageway in question and to take down or properly timber the loose and overhanging rock therein, and that defendant knew, or could have known by the use of ordinary care and caution, the dangerous and unsafe condition of the passageway and the presence of loose and overhanging rock therein in time to have prevented the casualty. But that defendant carelessly, negligently and recklessly failed and neglected to remove or properly timber the passageway, by reason whereof the rock fell, causing the death of deceased.

"The petition further alleged that deceased was thirty-three years of age, single and unmarried, having a mother living in Italy, who was dependent upon him for support.

"The answer denied the allegations of the petition, except those alleging the corporate existence of the defendant; contained a plea of contributory negligence and deceased's failure to properly care for his own working place, and his failure to properly perform the duties imposed upon him as an employee of defendant, and that the death was the result of an accident.

"The record does not disclose the filing of any reply, but the trial seems to have proceeded as though the affirmative allegations of the answer were traversed by a reply.

"After unsuccessfully moving for a new trial and in arrest of judgment, the case is brought here for review.

"Deceased was killed by the falling of a rock or piece of rock from the roof or ceiling, and the trial seems to have proceeded on the theory that if the place where the rock fell was under the sole charge and control of the deceased as his 'room,' there was no liability; while, contrariwise, if there was a duty on the defendant to inspect the place where the rock fell, and from such inspection its insecure position could have been determined, a liability would exist.

"There was positive evidence, substantial in character, from which the jury could determine the question of fact, and hence non-liability or liability, either way.

"It is true that frequently on cross-examination the testimony of a witness would be explained, and perhaps the positiveness of his statement on direct somewhat shaken, but this is usual; and unless there is testimony on cross-examination tantamount to a retraction, the testimony on direct stands and the duty rests with the jury to determine just what the witness's evidence has been.

"The evidence shows that after the neck was turned off the entry, room No. 10 was driven in by the deceased, a skilled miner, from fifty to eighty feet, according to the varying estimates of the several witnesses, when a clay seam was struck. Room No. 10 was twenty-three or twenty-four feet wide, and when the clay seam was reached, the deceased, under orders from defendant, drove a passageway through it a distance of from three to five feet, into another coal vein, where he again began the widening or 'drifting' process to form a room from which to remove the coal.

"The work of going through the clay seam, according to the testimony of at least one witness, was called in mine parlance 'narrow work,' the purpose evidently being to afford opportunity only for the free passage of cars and men to the room to be opened beyond, from which additional coal was to be mined.

"There is definite and substantial testimony that the company was responsible for the condition of places where 'narrow work' occurs, and of passage or entry-ways, no matter by what terminology such places may be designated. And there is also positive and substantial evidence that the company is not responsible for the condition of the room where the miner is actually mining coal unless the company is notified by the miner and then fails to correct a seemingly dangerous condition. This testimony undoubtedly accords with the settled mining law of this State. [State ex rel. v. Ellison, 270 Mo. 645.]

"There is no evidence that the deceased notified the company to examine and protect him against the possible casualty which happened.

"There is credible testimony that an examination of the roof would have detected the insecure position and condition of the rock, and there is equally credible testimony to the contrary.

"On Saturday preceding the casualty the deceased had set and fired a blast in the coal vein which he struck beyond the clay seam. Whether this blast loosened the rock is entirely problematical, as there is, and doubtless could be, no testimony on the subject.

"Defendant's contention on the merits is narrowed down to this: That inasmuch as it was the duty of deceased to protect the roof of his room No. 10 (no notice having been given by him to the company to do so), and inasmuch as the part of the rock which fell was that part of the rock which was imbedded in the roof or ceiling of roof No. 10, there is no liability, even though it was the duty of the defendant to inspect the 'narrow work' through the clay seam, and even though such inspection would have discovered the insecure rock and prevented the casualty.

"Counsel asserts in his statement of the case that the deceased 'had removed all of the coal in his room up to the clay seam. He was then directed to drive the room through the clay about twelve feet wide instead of twenty-four. . . . After passing through the clay seam the deceased had driven on into the face of the coal some twelve to fourteen feet and at least on one side had started to widen out his room again to the ordinary width. The widening process was only partly completed at the time of the accident.'

"It is apparent from these excerpts that it is counsel's theory that the original room No. 10, the passageway through the clay seam and the room to be formed by removing the coal from beyond the clay seam, constituted but one rom, and that no notice or request having been made to the company to inspect, there could be no liability.

"We are of the opinion that the case presents questions of fact which only a jury could determine. [Teter v. Coal Co., 201 Mo. App. 538; State ex rel. v. Ellison, 270 Mo. 645; Matthews v. Coal Co., 177 S. W. 650.]

"It was for the jury to determine where the rock or piece of rock fell, and whether room 10 (all the coal having been removed therefrom), had become a mere passageway, which it was the company's duty to inspect, and whether the entry-way through the clay seam was 'narrow work,' thereby placing upon the company the duty to inspect it. There was sufficient substantial evidence which if believed by the jury would support the verdict, and this being true, we have no authority to disturb the jury's finding.

"Complaint is made of the giving and refusing of instructions. We have carefully considered counsel's contentions and are of the opinion that they are without merit and the court properly declared the law applicable to the facts disclosed by the evidence.

"It is earnestly contended by counsel that there was an entire failure of proof that the mother of deceased was dependent upon him for support. And that there was no evidence by which the jury could fix a fair and just compensation to deceased's mother for the loss, to her, incurred by his death.

"There was evidence—meagre it is true, but nevertheless substantial in character—that deceased had helped support, maintain and care for his mother, and that he had sent to her every year since he had been in this country (a period of over sixteen years) a substantial sum—$200 or $300 a year. As the verdict was only $3500, we are of the opinion that there was sufficient evidence to justify the jury, in its discretion, to find the sum named in the verdict."

The argument of appellant in this court was confined to the points decided by the Kansas City Court of Appeals and was directed principally to the assignment that the demurrer to the evidence should have been sustained. We think the opinion quoted properly holds that the evidence made a case for the jury. The dissenting opinion relied on the following excerpt from State ex rel. v. Ellison, supra.

"Under the well established mining law of the State, it is the duty of the miner to keep his working place safe, and the duty of the master to keep the entries (the places generally used by many miners) in a condition of reasonable safety."

We have carefully read the record and agree with the majority opinion of the Court of Appeals that there was substantial evidence that the place from which the rock fell was not the place of work of the deceased, in the sense meant by this court in the Ellison case. Possibly the weight of the evidence was to the contrary, but we are not authorized to disturb the verdict, even though we should deem it not supported by the preponderance of the evidence. The trial court might have exercised its power in such respect, had it been convinced that the verdict was against the weight of the evidence. This court is limited to the question of whether or not the verdict is supported by substantial evidence. [Pietzuk v. Kansas City Railways Co., 289 Mo. 135, l. c. 159, 232 S. W. 987; Hill v. Kansas City Railways Co., 289 Mo. 193, l. c. 204, 233 S. W. 205; Dutcher v. Railroad Co., 241 Mo. 137, l. c. 167, 145 S. W. 63.]

Accepting it as a fact determined by the verdict of the jury that the rock which fell upon and killed the deceased did not fall from the roof of the place of work of the deceased, but in a passageway to and from such place of work, which it was the duty of appellant to inspect and to exercise the requisite care to keep reasonably safe, our ruling in State ex rel. v. Ellison, supra, relied upon in the dissenting opinion, was not contravened by the majority opinion.

We are satisfied from a study of the record that the majority opinion has correctly disposed of the other contentions considered

therein. It is contended that the proof is not sufficient that deceased's mother was dependent upon him for support and that respondent's Instruction 3 failed to require the jury to find such fact.

While the petition alleged that appellant's mine was "operated on what was known as the room and pillar plan," the negligence pleaded is a violation of appellant's common-law duty and the facts are not alleged as constituting a violation of any of the provisions of Article II, Chapter 69, Revised Statutes 1919, entitled, "Mines and Mining." Section 7514 of said article gives a right of action for the death of a miner, caused by a violation of said article, to certain relatives and, in the absence of such named relatives, "to any person or persons who were, before such loss of life, dependent for support on the person or persons so killed." The administrator of the person killed could not maintain an action under Section 7514. The right accrues to, and the action must be brought by, the designated relative, or by the person dependent upon the deceased for support, in his or her own name. In an action under Section 7514, a finding of the fact of dependency would be necessary.

But this action was evidently brought under appellant's common-law liability for negligence and recovery of damages is asked under Section 4219, Revised Statutes 1919, which refers to and adopts portions of Section 4217. By subdivision "fourth" of Section 4217, the action may be brought by the administrator or executor of the deceased, when such deceased was an adult leaving no husband or wife or minor children. Under said section, the question of dependency for support is not a necessary or material issue for the determination of the jury. The only inquiry upon which to base the recovery is the "necessary injury resulting from such death."

It was therefore not necessary for respondent to prove the fact that deceased's mother was dependent upon him for support. The proof of that character which was made was admissible upon the question of the "necessary injury resulting from such death," required by Section 4217.

Respondent's Instruction 1, in connection with Instruction 6 given on behalf of appellant, plainly and definitely informed the jury that respondent could only recover in the event that the rock which killed the deceased fell from the roof of the passageway and not from the roof of deceased's place of work. And even if the jury found that the rock fell in the passageway, the further facts were required to be found that the roof of the passageway was unsafe because of loose rock therein and that appellant negligently failed to use ordinary care to make said roof reasonably safe and that the death of the deceased was caused thereby.

Appellant's Instruction 3, which the court refused to give, was sufficiently covered by Instruction 6, given by the court at appellant's request.

The refusal of Instruction 4, requested by appellant, is complained of. It was as follows:

"The jury are further instructed that if they believe and find from the evidence that the deceased Batista Biondi went to work under the rock which fell upon him and killed him when he did not know whether the rock above him was safe or not and without examining and testing said rock then the deceased was guilty of such contributing negligence as to preclude a recovery, and your verdict should be for the defendant."

The mere fact that deceased may have been doing some sort of work under the rock at the time it fell would not necessarily constitute that place his working place, for the safety of which he alone was responsible. That would depend upon the character of the work he was doing. [Matthews v. Central Coal & Coke Co., 177 S. W. (Mo.) 650.] The reason for the rule that the miner is responsible for the safety of his place of work is that the condition of safety of such place is affected by the nature of the work and by changes made in it from day to day and sometimes from hour to hour. He is the one doing the work and making the changes and is in the best position to know when such place of work becomes unsafe. Usually the safety of others than himself is not affected by his want of care in such place of work. The only eyewitness of the fatal accident was the room boss, who testified that deceased was digging in the bottom, evidently preparing to move up the track, when the rock fell on him. Of course, he was under the rock at that time or he would not have been caught by its fall. The giving of refused Instruction 4 would have been equivalent to a peremptory instruction for the jury to find for appellant under the circumstances. It would necessarily have been compelled to find that deceased was doing work of some sort under the rock, in view of the only proof on that point. We think appellant's Instruction 4 was properly refused.

We have carefully examined the record and find no reversible error therein. The judgment should be affirmed and such is our order. *White, C. J., Walker, Ragland, Atwood* and *Gantt, JJ.,* concur.