MERCURY MINING COMPANY v. CHAMBERS.

4-4549

Opinion delivered March 8, 1937.

*John Owens* and *George R. Steel,* for appellant.
*Tom Kidd,* for appellee.

MEHAFFY, J. This is an action to recover damages for personal injury alleged to have been caused by the negligence of appellant. Appellee's complaint alleges that on January 20, 1936, appellee was in the employ of the appellant and was required to go into the shaft to work, and while working at the bottom of the shaft, and while in the exercise of due care, was injured by the negligence of appellant. The shaft was approximately 6 x 8 feet, and 60 feet deep. Appellant was 47 years old, but had never had any experience in mining operations until he began to work for appellant in January, 1936. When he was first employed he worked on top of the ground, and when he was injured he had gone down into the shaft to work the second time. His duties in the shaft were shoveling muck, rock and shale from the bottom of the shaft into a bucket which held approximately one-half ton. He was furnished lights so that he could see and observe the nature and character of the walls. The walls of the shaft were braced down to within 10 feet of the bottom, and while working down at the bottom, performing the duties required of him, several hundred pounds of rock, shale, dirt and debris slid and fell off the walls of the shaft, and struck and injured the appellee, breaking his jaw bone, breaking six ribs, breaking the little finger on the right hand, causing a scalp wound across the head, knocked the right shoulder down and bruised, maimed and wounded his entire body.

The appellant answered denying all the material allegations of the complaint, and alleging that appellee assumed the risk, and was guilty of contributory negligence.

There was a judgment for $1,250 and this appeal is prosecuted to reverse said judgment.

The appellee testified in substance that he had farmed mostly, and did not have any experience in working in mines until he went to work for appellant. He began work on January 12 and received the injury on

January 20. He first worked on top of the ground, but a few days before his injury he went under the ground and worked a while. He was injured about 3 o'clock in the morning; had started to work at 6 o'clock in the evening. His nephew, Ira Chambers, was foreman. No one gave appellee any instructions other than telling him to get in the shaft and work. The shaft was braced with oak timber. Appellee was working at the bottom or floor of the shaft, and it was ten or twelve feet above to the timbers. Witness did not think it was dangerous, and relied on his master's superior knowledge, and thought it was safe. While he was at work shoveling muck from the bottom and putting it in the bucket, the wall gave way and slid in, struck witness, knocked him unconscious, and when he came to he was lying on his back with the rocks on him; suffered the injuries described in his complaint; he was carried to the hospital at Nashville. The only work witness had ever done underground, was digging in wells 25 or 30 feet deep, and it was not necessary to brace these wells. If witness had known there was any danger, he would not have gone down. Witness had nothing to do with putting the timbers in or bracing the walls. The day crew did this, and Ezra Ballard was foreman of this crew.

Mr. Funk was the general manager, and Ballard testified that they used two-inch oak timbers to brace the walls, and that he, Ballard, had asked Funk for timbers to timber the shaft. Mr. Funk did not furnish them. Witness told him they needed the timber for this particular shaft. He asked for timbers on two different days, and the appellant did not furnish the timbers when witness advised they needed them. He said it was practical to keep the timber even with the ground at all times, and that this should be done, and the reason he did not do it was because he did not have the timbers.

The only evidence contradicting appellee's statement about how the injury occurred was a statement by Lester Cook. Appellant filed petition for continuance, alleging that Cook was a material witness, and if present would testify that the appellee was digging down and removing rock from the walls. There was no other

witness in the shaft at the time. A continuance was not granted, but Cook's statement was introduced in evidence.

There are no errors argued by appellant except it contends that the court erred in refusing to direct a verdict for it. It calls attention to several authorities on the question of assumed risk. It is well settled in this State that where one enters the service of another, he assumes the ordinary and usual risks and hazards of the employment. He does not, however, assume the risk or hazard arising from the negligence of the master, unless he knows of such negligence.

The jury was properly instructed as to assumed risks, and properly instructed as to all other issues in the case, and its verdict is conclusive on all questions of fact.

The master owes the duty to the servant to protect him from injury. He is not an insurer, but he must exercise ordinary care to protect the servant from injury. It is the master's duty to exercise ordinary care to provide the servant with a safe place in which to work. 39 C. J. 281; 18 R. C. L. 554.

It is, however, not only the duty of the master to use ordinary care to furnish his servant with a reasonably safe place to work and with reasonably safe machinery and appliances, but he must also, by inspection from time to time, and by the use of ordinary care and diligence in making repairs, keep them in safe condition. 39 C. J. 415.

According to the evidence of Ballard, the foreman of the day crew, whose duty it was to keep the walls braced, he requested the general manager on two different days to furnish him timber to brace the walls of the shaft, and told him they were needed in this particular shaft. It is true that appellee could see that the braces did not extend down to the bottom of the shaft, but he thought it was safe, and there was nothing to indicate to appellee, so far as the evidence shows, that it was not safe. The appellee relied on the superior knowledge of his employer.

"Although an employee may have had knowledge, as of a physical fact, of the defective condition of a tool, appliance or place, by reason of which he has sustained an injury, it by no means follows that he must have appreciated the danger to which he was exposed. His general knowledge may not have been such as to give him any conception of the peril. The condition may have appeared perfectly harmless. If this is shown to have been the case, his right of recovery is not defeated, for it is an appreciation of the danger, not mere knowledge of the defect by which the danger is threatened, that bars his action." 18 R. C. L. 649.

The evidence in this case shows that the appellee had had no experience in work of the character he was doing, and the only instruction he was given was to go down into the shaft and work.

It is contended, however, by appellant that the work itself rendered the place unsafe, or that the place to work is constantly changing as the work progresses.

Attention is called to the case of *St. Louis I. M. & S. Ry. Co.* v. *Baker,* 110 Ark. 241, 163 S. W. 152. In referring to conditions or the work itself making the place unsafe, the court in that case said: "It is well settled that such instances are exceptions to the general rule making it the duty of the master to furnish a safe place to work; where the servant, for instance, is employed to wreck or tear down a structure, as an unsafe house or bridge, or is required to handle disabled cars, or to do the work or blasting and excavating in a mine."

But no such condition existed in the instant case. The danger here was from the caving in of the walls. Appellee's work had nothing to do with changing the condition of the walls, and in no way tended to make his place to work unsafe.

Appellant next calls attention to the case of *Moline Timber Co.* v. *McClure,* 166 Ark. 364, 266 S. W. 301. The court, however, in that case held that it was a question for the jury.

The question of the negligence of the appellant and contributory negligence or assumption of risk by the appellee were questions of fact properly submitted to the

jury, and there being substantial evidence to sustain the judgment, the judgment is affirmed.