[Civ. No. 2562.   Fourth Appellate District.—March 24, 1941.]

ALFRED HANSON et al., Respondents, v. REEDLEY JOINT UNION HIGH SCHOOL DISTRICT, Appellant.

644

Chester O. Hansen and Bronson, Bronson & McKinnon for Appellant.

W. H. Stammer, Galen McKnight and Carlson & Lones for Respondents.

BARNARD, P. J.—This is an action for damages based upon the death of Ruth Hanson and injuries suffered by Lucile Ledbetter, both resulting from the same automobile accident. Both girls were students in the Reedley Junior College, which was operated by the defendant high school district. The trustees of this district were made defendants, but a nonsuit was granted in their favor. A jury returned a verdict of $5,000 on account of the death of Ruth Hanson, and $1500 for the injuries to Lucile Ledbetter. From the judgment entered the defendant high school district has appealed.

All students of the Reedley Junior College were required to take some form of physical education, but were permitted to select and participate in one of certain major sports, including tennis, as fulfilling this requirement. Ruth Hanson, Lucile Ledbetter, Theodore Eschwig and certain other students accordingly chose tennis and were members of a tennis team. From early in February, 1938, until May 4, 1938, these students practiced tennis on the school grounds from three to five afternoons a week, under the direction of a teacher assigned for that purpose by the principal of the Junior College. These practice sessions lasted about an hour, beginning about 4:15 p. m., and the students received one unit of credit therefor during that semester.

Ruth Hanson lived seven or eight miles and Lucile Ledbetter some ten miles from the school. The bus provided by the school district for transporting these students from and to their homes left the school shortly after 4 o'clock each afternoon. This left these girls and some of the other students without a way to go home on the nights they played tennis. Since 1933, it had been the practice for the teacher in charge to make an arrangement with certain students, who thus played tennis and who had automobiles, to take other students to their homes. The students thus using their cars were given a gallon of gasoline for each ten miles traveled, the gasoline being taken from the school pump and the board

of trustees being later reimbursed for the gasoline out of the funds of the student body organization. This taking of gasoline from the school pump and this use of student body funds was accomplished by a system of requisition cards and checks which required the signatures of the teacher in charge of the tennis practice, of another teacher, of the principal and vice-principal of the Junior College, and of the county superintendent of schools. Accounts of the student body funds were reported each month to the board of trustees of the district, copies of the accounts being given to each member of the board.

At the start of the tennis season in February, 1938, Ruth Hanson and Lucile Ledbetter asked the teacher in charge how they were to get home after tennis practice. This teacher, in accordance with the practice that had been followed for several years, arranged with Theodore Eschwig, another player on the tennis team, to use his automobile for that purpose, telling him that he would receive one gallon of gasoline for every ten miles so traveled. He then directed Lucile Ledbetter and Ruth Hanson to ride home after tennis practice with Theodore Eschwig in his automobile. This they did most of the time until May, 1938, making approximately fifty trips in that manner, Eschwig receiving the promised gasoline.

Theodore Eschwig's car was a 1930 Ford sport roadster, stripped down to what is commonly known as a ''bug''. It was equipped with special carburetor and a high compression head in order to give it more speed and power. It had no fenders, no running board, no top and no horn. It had faulty lights, the speedometer was about twelve miles slow, the tires were worn and smooth, and the steering wheel was so loose that it was necessary to spin it a quarter of the way around before it took effect. The seat had been so lowered that the heads of the occupants came just above the doors, and when three people were in the front seat their knees stuck up so that it was practically impossible for the driver to reach the emergency brake. There is testimony that the brakes were faulty to the extent that when the car was traveling at high speeds ''you might just as well not put them on''.

On May 4, 1938, Theodore Eschwig started home from tennis practice with Ruth Hanson, Lucile Ledbetter and three other students in this automobile, three in the front seat and

three in the rumble seat. There is evidence that while he was proceeding along a highway at a speed of about fifty-five miles an hour he overtook another automobile traveling in the same direction and driven by a man named Buhler at a speed of ten or fifteen miles an hour. As Eschwig was attempting to pass the other car, without slackening his own speed or sounding any horn, Buhler started to turn to his left across the highway toward the driveway of his own home. Eschwig swerved to his left off of the highway, the two cars came together about opposite the Buhler driveway, and the Eschwig automobile flew into the air landing upside down some fifty feet beyond the point of impact. One of its tires was found to be flat after the accident. As a result of this accident Ruth Hanson died and Lucile Ledbetter received the injuries here in question. The appellant suggests that Buhler was entirely responsible for this accident and that "the evidence actually reveals little, if any, negligence on the part of Eschwig". This suggestion requires little consideration. The evidence discloses that Eschwig was at the time violating at least eight sections of the Vehicle Code and indicates that several of these violations had a direct and important bearing on the happening of the accident. The evidence amply supports the inference that Eschwig's negligence was at least one of the proximate causes of the accident.

The appellant contends that Eschwig was not its agent since he had not been hired by its board of trustees; that the teacher in charge of this tennis practice had no authority under the school law to furnish transportation to pupils; that the district itself had no such authority since this was not a regular school class; that the district did not, in fact, furnish this transportation since it had not made the arrangement with Eschwig and had not directly authorized the teacher to do so; and that if the district did furnish this transportation it had no right to do so since it had not called for bids, as required by section 1.70 of the School Code. It is further argued that the evidence discloses no negligence on the part of the teacher in charge of this tennis practice, that if Eschwig was partly to blame it was his own fault in traveling too fast in view of the condition of his car and the number of people therein, and that his doing such an act was something which neither the teacher nor the district could have anticipated.

■ The statement that Eschwig was not the agent of the appellant might well be questioned in view of the existing arrangement and the knowledge brought home to the board of trustees. It is not necessary, however, to decide that question under the view we take of other elements in the case. The district had authority under the code sections to furnish transportation to these students since this was a school class within the meaning of sections of the School Code, regular school credit being given for participation therein. The provision that in furnishing transportation the board must call for bids where a contract was to be let may not have been followed, but the board is hardly in a position to take advantage of its own wrong in that respect as a defense to a charge of negligence in other respects. The real questions here are whether the evidence supports a finding that an agent of the appellant, while acting within the scope of his employment, was guilty of negligence which was a proximate cause of these injuries. If so, the appellant is responsible for the results of that negligence.

■ Under section 2.801 of the School Code the appellant is liable for the negligence of its employees. The teacher in charge of this tennis practice was such an employee and since such practice was a class for which credit was given, such work was within the scope of his employment. Irrespective of whether or not it was the appellant's duty to furnish transportation to students engaged in such a class leading to school credit it was liable for any negligence of its employees in handling such a school activity. (*Bates* v. *Escondido U. H. School Dist.*, 133 Cal. App. 725 [24 Pac. (2d) 884].) The basic question here is whether the appellant and its employees, in carrying on this school activity, used ordinary care under the circumstances here appearing in view of the general situation and the knowledge of the parties. (*Bellman* v. *San Francisco H. S. Dist.*, 11 Cal. (2d) 576 [81 Pac. (2d) 894].) In that case, in approving a rule stated in *Goodman* v. *Pasadena City H. S. Dist.*, 4 Cal. App. (2d) 65 [40 Pac. (2d) 854], the court said: " . . . a plaintiff may recover by proving either the existence of a danger known to the authorities, who neglected to guard the pupils against it or that there was an unknown peril which by the exercise of ordinary care under the same circumstances a reasonably prudent person would have discovered." In

*Taylor* v. *Oakland Scavenger Co.*, 17 Cal. (2d) 594 [110 Pac. (2d) 1044], the court said: "It is not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities in order to establish that their failure to provide additional safeguards constituted negligence. Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of such safeguards".

▮ Whether or not the teacher in charge of this class was authorized to provide transportation to their homes for the pupils participating therein, if he undertook to do so as a part of his conduct of the class and as a thing essential to the continuance of the class it was his duty to use such ordinary care in connection therewith as would have been exercised by a reasonably prudent person under the circumstances, and if he failed to do this he would be guilty of negligence.

▮ The teacher in charge of this class testified that he had seen Eschwig's car on many occasions, that it was usually parked near the place where the tennis was played, that he knew it had no top or fenders, and that the seat "had been dropped down". When asked where the heads of persons sitting in the car would come "in reference to the top of the sides and windshield" he replied, "Pretty low down. Their heads—oh, the heads would be just so you could see their heads". He testified that Eschwig had told him "several times about driving down out of the mountains in which he skidded around corners". He testified that he did not always see Eschwig start out with his passengers after the tennis practice periods but that he did see this a few times, and that "a few of the times he started up fast enough so that the wheels spun and kicked the dirt". He further testified: "I would say he was a harum-scarum driver." When asked what he meant by harum-scarum he replied: "Harum-scarum—a tendency toward recklessness, perhaps." With this much knowledge of this car this employee testified that he made no further examination of it, although the car was close at hand during the practice periods. Even a slight examination would have shown that the car had no horn, and might well have disclosed its other defects. With such knowledge of the condition of the car as might well have caused a reasonable person to avail himself of the continuing op-

portunity to make an examination as to its actual condition, and with knowledge that the driver of the car at least had a tendency toward recklessness, this employee, without further examination and without even cautioning the driver, so far as the record shows, arranged to have this car and driver used for a purpose essential to the class, and not only permitted his students to ride therein but directed the two students here in question to do so.

Whether a reasonable person, in charge of such a class, presented with such a problem of getting his students home, and possessing such knowledge would, without further examination or provision for their safety, direct his students to ride in such a car with six nearly grown persons crowded therein, and with a driver who was known to have a tendency toward recklessness, is, to say the least, a question of fact. It cannot be held as a matter of law that the conduct of this employee, in this connection and under these circumstances, was not negligent.

The evidence justifies the inference that the condition of this car and the manner in which it was being driven by Eschwig at the time played a large part in the happening of this accident. It also justifies the inference that a reasonably prudent person would have foreseen that an accident of this type would be likely to happen if such a car, thus overloaded, and with such a driver, was used for this purpose. In view of these facts and under the rules above cited it cannot be held as a matter of law that the negligence, if any, of appellant's employee was not, under these circumstances, one of the proximate causes of this accident. This was also a question of fact for the jury and both questions have been resolved in favor of the respondents by the verdict. The evidence supports the implied findings of the jury and it cannot be held, as a matter of law, that the appellant and its agent were free from any negligence which was a proximate cause of these injuries.

The appellant next contends that an instruction given was prejudicially erroneous in that one portion thereof ''assumes a fact in dispute, to wit, that the school district did furnish the automobile driven by Mr. Eschwig'' and that this portion ''advises the jury that negligence could be predicated because the school district did not furnish transportation''. This instruction assumed nothing, but merely set forth cer-

tain things as having been alleged by the respondents, followed by this statement: "It is for you as jurors to determine from the evidence and from the law as given to you by the court whether or not these things are true, and whether or not the plaintiffs are entitled to recover against the defendant in this case." Moreover, the court also gave an instruction "You are instructed that the mere fact that the school district did not provide bus transportation for the tennis team cannot be made the basis of liability on behalf of the school district as the school district had no obligation so to do." We find no error in this connection, prejudicial or otherwise.

It is further contended that the court erred in giving the following instruction: "Every teacher in the public schools must hold pupils to a strict account for their conduct on the way to and from school." While this instruction was based on section 5.543 of the School Code, the same was in no way related to the issues in this case and this instruction should not have been given. However, the issues in this case were entirely related to the powers, duties and responsibilities of the appellant and its employees in connection with furnishing this particular transportation and directing these students to ride in this car, and there was no evidence of any further or additional negligence in not following or watching these students after the trip started and during its progress. While the instruction should not have been given it could not have misled the jury in view of the clear issues submitted to it. It would be unreasonable to believe that it affected the result and we are not convinced that it resulted in any miscarriage of justice. The error in question is, therefore, not reversible under section 4½ of article VI of the Constitution.

The only other point raised is that the court erred in refusing to permit the appellant to introduce testimony to the effect that Mr. Buhler, the driver of the other car involved in this accident, made payments to the respondents on a covenant not to sue, to the end that any amount so paid should be applied in mitigation of damages. The only record in support of this contention is that while one of respondents' attorneys was on the witness stand, having been called in behalf of the appellant, the attorney for the appellant asked the witness whether it was not a fact that he "represented Mr. Buhler out of the claim arising out of this accident". An objection to this question having been sustained the at-

torney for appellant said: "That is all". Assuming that any such evidence was otherwise admissible, there is no evidence of any payments having been made by Mr. Buhler, no offer of proof in that connection was made, and nothing was said to in any way call the court's attention to the fact, if it was a fact, that such a payment had been made or to any desire on the part of counsel to introduce any evidence in such a connection.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1941.