**219 P.2d 962**

**SANCHEZ v. GATTAS et al.**

**No. 5262.**

Supreme Court of New Mexico.

June 30, 1950.

W. T. O'Sullivan, Albuquerque, for appellant.

Simms, Modrall, Seymour & Simms, Albuquerque, Joseph E. Roehl, Albuquerque, for appellees.

McGHEE, Justice.

We will refer to the parties as they appeared in the trial court.

This is an action for conversion and the record contains the story of the passing of a name long famous in New Mexico, the "White Elephant" bar, the rendezvous of the sporting fraternity and political leaders in preprohibition days when it was located at Second and Central in Albuquerque. Following the passing of the prohibition era the "White Elephant" was opened in south Albuquerque with a different class of trade. We will skip much of the story and start where the plaintiff entered the picture.

The license and title to the bar stood in the name of liquor inspector Bruno and three others who sold to the defendants, who, in turn, sold to the plaintiff and another on a harsh conditional sales contract, but the license was left in the name of Bruno. Shortly thereafter the plaintiff took over the interest of his associate. He had paid approximately two-thirds of the purchase price of $15,000 and was not in default in the deferred payments at the time of the claimed conversion.

On Sunday, March 30, 1947, according to the testimony of the plaintiff, he was in the bar at peace with the world and engaged in preparing his bank deposit for the following day while his wife and two friends were impatiently waiting for him to complete his task so they could all go for an airplane ride. The "roof fell in on him," and he found himself stripped of his bar and business in a remarkably short time, in the manner following:

Just as he was completing his task, Chief of Division of Liquor Control Tom Montoya, (hereafter styled Chief) accompanied by one of his inspectors, began pounding on the door and loudly demanded admittance; upon being admitted the Chief accused him of serving liquor on Sunday and ordered that he forthwith close the place and keep it closed until he, Montoya, gave permission for its reopening, although under the law he must give a hearing before he can close a bar. The plaintiff denied that any liquor

had been served, but closed the place and left with his wife and friends for the plane ride. The next day, without notice to the plaintiff, the Chief transferred the license from Bruno to the defendants and then issued a new license to them. A notice to show cause why the license should not be cancelled for serving liquor on Sunday, March 30, was then issued directed to the defendants. Shortly thereafter the defendants with their attorney, O. N. Marron, came to Santa Fe and brought the plaintiff with them. They went to the offices of the Chief, who then, presumably, had cast off the garb of an arresting officer, and was sitting in his private office as judge and executioner. The attorney alone went into the private office, closed the door and there negotiated a "compromise" on behalf of these defendants under the terms of which they paid the Chief the sum of $500.00 for the use of the State and agreed that the bar would not be again opened in the same location. The plaintiff testified that all of this was done without his knowledge or approval. This marked the demise of the "White Elephant," and a famous resort now lives only in memory of patrons in the days when the customer poured his liquor and women did not enter bars.

According to testimony in the case, the defendants immediately placed locks on the doors to the bar and they thereafter exercised exclusive control of such bar and

stock. It is agreed the fixtures, stock and license were later sold by the defendants and moved to a new location under a new name. The plaintiff testified that all of this was without his consent.

Notice of cancellation by the defendants of the conditional sales contract for exposing the license to danger of cancellation on account of liquor violations, as well as for contracting indebtedness in the name of the defendants, was served on the plaintiff on April 19, 1947, long after they had taken actual possession of the physical property and the license had been issued to them.

In their answer the defendants pleaded various breaches of the conditional sales contract, and at the conclusion of the plaintiff's case they interposed a motion for a directed verdict in their favor on the following grounds:

"That the testimony of the plaintiff himself has shown that there was a consent and approval to the taking by the defendants Gattas and Hogue. Further, that the testimony of the plaintiff himself has shown that if there was no consent originally, there was ratification by his acts and conduct.

"As further grounds for our motion there has been no tender whatsoever at any time by the plaintiff of the balance which was admitted still due under this contract."

The motion was denied and the defendants then put on their case which was in

turn followed by the rebuttal evidence of the plaintiff.

At the conclusion of all of the testimony, the motion was renewed and was then sustained by the trial court on the ground that there was no substantial evidence of conversion.

■ We do not agree with this view of the trial court. On a motion for a directed verdict all testimony in favor of the plaintiff had to be taken as true, and he was entitled to the benefit of all fair and reasonable inferences reasonably inferrable or deductible therefrom. Pilon v. Lobato, 54 N.M. 218, 219 P.2d 290, and cases therein cited.

■ No useful purpose would be served by a recital of additional evidence from the long record made at the trial. While the verdict could have gone either way, in our opinion there was sufficient evidence to take the case to the jury. Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197.

The judgment will be reversed with instructions to set aside the judgment in favor of the defendants, and to grant the plaintiff a new trial. The costs will follow the final judgment. It is so ordered.

BRICE, C. J., and LUJAN, SADLER, and COMPTON, JJ., concur.