246 P.2d 1052

McMULLEN et al. v. URSULINE ORDER OF SISTERS.

No. 5453.

Supreme Court of New Mexico.

July 31, 1952.

Harry L. Bigbee, Donnan Stephenson, Santa Fe, for appellants.

Owen B. Marron, Alfred H. McRae, Albuquerque, for appellee.

COMPTON, Justice.

This is a personal injury action. Appellee, during the 1945–1946 school year, operated a private boarding school at Waterflow, New Mexico. Appellant was then 17 years of age. Previously, he had attended the public school at Kirtland, near Farmington. His attendance at the Kirtland school was quite irregular, resulting from his truancy. His parents, upon learning that he had absented himself from the Kirtland school upon several occasions without their permission, became greatly concerned, and to guard against such delinquency, decided to enroll him in the private school conducted by appellee. His mother and father, accompanied by appellant, discussed his truancy with the superintendent of appellee's school. The superintendent was fully informed of his record, nevertheless agreed to his enrollment and assured his parents that he would be kept in school during school hours and off the highways. Appellant was not to leave the school grounds without the permission of his parents. Pursuant to the undertaking, appellant was enrolled in appellee's school. He attended regularly during the Fall, 1945 term, and until March 14, 1946, the date of the alleged injury.

In the Spring of 1946, appellee was engaged in an improvement program of its school grounds, including walks, driveways, and the construction of a grotto. On various occasions students were dis-

missed during school hours to participate in the program. It appears that on March 13, 1946, certain girl students were permitted to go to a mine located in the vicinity for the purpose of obtaining shale to be used in the program. The following day, appellant, with four younger boys, was excused from classes to do likewise. Permission was given the boys to dig shale in the place visited by the girls the previous day. Pursuant to the permission granted, appellant and his four companions took a tractor with wagon attached, tub for carrying shale, and went to the mine. The entrance to the mine was protected by what appeared to appellant to be a solid rock ledge supporting an overhanging of four or five feet. The method employed in mining was to crawl under this ledge, dig the shale, fill the tub and load it into the wagon. On the occasion in question, while appellant was thus engaged, the ledge violently caved down upon him causing serious injury.

The action was instituted by Lewis D. Durant as next friend, but due to delay, appellant had attained his majority at the time of hearing and the action was carried on in his name. The complaint generally charges that appellee was negligent in permitting appellant, without permission of his parents, to leave the school ground, and to mine the shale without proper supervision. The answer denies all material allegations. Contributory negligence and assumption of risk are also pleaded as a defense. The cause was tried to the court sitting with a jury. When appellant rested, appellee moved for a directed verdict on the grounds that there was no evidence of appellee's negligence, and that appellant was guilty of contributory negligence as a matter of law. The motion was granted and from a judgment following the verdict, appellant brings the cause here for review.

The questions presented are, (a) whether the trial court erred in determining the evidence introduced by appellant was insufficient to require submission of the case to the jury, and (b) whether the court erred in determining that appellant was contributorily negligent as a matter of law.

When a verdict is directed as being without support in the evidence, the court must view a plaintiff's evidence in the most favorable aspect, indulging all reasonable inferences to be drawn therefrom and disregarding all unfavorable testimony and inferences, to sustain the verdict. Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047; Sanchez v. Gattas, 54 N.M. 224, 219 P.2d 962; Dickerson v Montoya, 44 N.M. 207, 100 P.2d 904; Hobbs v. Kizer, 10 Cir., 236 F. 681.

So viewing the evidence of appellant, plaintiff below, we conclude that the trial court erred in directing the verdict. The question was one for the jury if there were evidence of the existence of

a danger known to the school authorities who neglected to guard its student against such danger or if there were an unknown danger which appellee, by the exercise of ordinary care as a reasonable prudent person, would have discovered. In this regard, there is no evidence that appellee's servants had ever inspected the shale mine or had otherwise attempted to determine if shale could be safely mined therefrom. We quote from appellant's testimony:

"Q. Did you have any discussion with any of the faculty about how and where the shale was to be gotten? A. Yes, we had.

"Q. With whom? A. Sister Ruth Helen.

"Q. Will you tell what your instructions were? A. Since we could not get the pickup to load the shale, we had to take the tractor and a washtub and shovels.

"Q. Who gave you the instructions? A. The discussion was with Sister Ruth Helen, I believe Whittington and myself.

"Q. Was the location mentioned in your conference with Sister Ruth Helen? A. Yes, sir, that is the only shale bed there, that we knew of.

*       *       *       *       *       *

"Q. Will you state again, in a little more detail, Mr. McMullen, the instructions that you received, if any, from Sister Ruth Helen? A. We talked to her, but she could not give us permission. She had to talk to Sister Eugenia, I guess.

*       *       *       *       *       *

"Q. What did she say after she returned? A. She told us to go to the same place and get the shale and return to the school.

"Q. What place did she refer to? A. The same place the girls had gone.

"Q. Was the location generally specified? A. Yes, sir, it was.

"Q. What was the location she told you to go to? A. Sister Ruth Helen said to go to Smouse Mine and continue up the road from the Smouse Mine to the only shale pit there was there.

*       *       *       *       *       *

"Q. Where was the shale available? A. Only at that pit. That was the only shale we saw. * * *"

We think it is clear that from the unsupervised mission, under the circumstances, a jury could reasonably infer that appellee was negligent.

The annotator, at 160 A.L.R. 229, states generally the circumstances under which school authorities may become liable:

"* * * where a school district or other agency or authority is liable for the negligence of a teacher, and a teacher, while acting within the scope of his authority or employment, orders or directs a pupil or student to perform a certain errand or task for the benefit of the teacher or the class, whereby, because of the immaturity or inexperience of the pupil or student, * * * injuries to the latter or to a fellow pupil or student result therefrom, the teacher may be found to have been negligent so as to render the school district or other agency or authority liable therefor. * * *"

The author, at 38 Am.Jur., Negligence, states the rule, under which a defendant's liability may be withdrawn from the jury, as follows:

"* * * Where not only the facts constituting the conduct of the parties, but also the standard of care which they should have exercised, are to be determined, the case is entirely one of fact to be decided by the jury. * *" (Section 344)

"The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a question of law when, and only when, the facts are indisputable, being stipulated, found by the court or jury, established by evidence that is free from conflict, and raise an inference which is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it and draw the same conclusion. * * *

"As long as the question remains whether either party has performed his legal duty or has observed that degree of care or caution imposed upon him by law, and the determination of that question involves the weighing and consideration of evidence, the question must be submitted as one of fact. * * *" (Section 345)

In following the rule, in Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706, 711, we said:

"Of course, the character and quality of performance required to be exercised in dealing with a minor, and likewise the character and quality of performance by which a minor's conduct is itself measured, in personal injury cases, must vary according to the circumstances; yet, there still remains in cases of this character, one method by which to gauge it: Ordinary, reasonable, or due care under the circumstances. See the case of Charbonneau v. MacRury, 84 N.H. 501, 153 A. 457, [73 A.L.R. 1266,] for a very scholarly and illuminating discussion of the question of ordinary

care and caution as it applies both to an infant's own conduct and the conduct of one toward an infant."

Also, in Olguin v. Thygesen, 47 N.M. 377; 143 P.2d 585, 591, we adhered to the rule:

"* * * 'when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury' is the rule almost universally applied, and the one which we approved and applied in Padilla v. Atchison, T. & S. F. R. Co., 16 N.M. 576; 597, 120 P. 724, 729. See, also, Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, and Russell v. Davis, 38 N.M. 533, 37 P.2d 536."

The courts of other jurisdictions are in accord. Hanson v. Reedley Joint Union High School Dist., 43 Cal.App.2d 643, 111 P.2d 415; Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598; Beardsell v. Tilton School, 89 N.H. 459, 200 A. 783; Stockwell v. Board of Trustees of Leland Stanford Junior University, 64 Cal.App.2d 197, 148 P.2d 405; Satariano v. Sleight, 54 Cal.App.2d 278, 129 P.2d 35.

Appellee argues that appellant was guilty of contributory negligence as a matter of law. The argument is without merit. There is evidence which would warrant the jury in finding that appellant was not contributorily negligent. It must be borne in mind that he was slightly under the age of 18 years, was inexperienced in mining, had not seen the mine previously, and the overhanging appeared to him as solid rock. We believe that from such evidence the jury could have found appellant free from contributory negligence. Whether appellant exercised the proper care for his own protection may be gleaned from his description of the mine:

"Q. Describe the physical condition of the pit. A. You mean the formation before it caved in?

"Q. Yes. A. There was a ledge of rock stuck out and we had to go under the ledge and load the tub.

"Q. How far did you go under the ledge to get the shale? A. As near as I can remember, it must have been four to six feet.

"Q. Can you estimate the thickness of the ledge above the shale? A. It was about four feet thick,—somewhere around there.

\* \* \* \* \* \*

"Q. Don't you recall that? You were aware of the fact that soil could cave in? A. Yes, sir.

"Q. You were aware of that fact? A. It looked like a rock shelf.

\* \* \* \* \* \*

"Q. How thick was the rock ledge under which you were working? A. I would say four and a half or five feet.

"Q. Was there anything to indicate that it was not safe? A. No, there was not.

"Q. What did it look like? A. It looked like solid rock to me.

\*　\*　\*　\*　\*　\*

"Q. Tell how you went about getting the shale. A. Roy Whittington and I would go under the ledge and fill the tub and carry it out. When the accident happened I was down in there.

\*　\*　\*,　\*　\*　\*

"Q. Did you at that time have any question in your mind whether it was safe? A. No, we had no question in our mind. If so, I would not have gone in.

\*　\*　\*　\*　\*　\*

"Q. Was there anything to indicate it was not safe? A. No, there was not.

\*　\*　\*　\*　\*　\*

"Q. There was nothing to indicate you might get hurt? In your mind did you think you might get hurt? A. No, sir. \* \* \*"

■ Where the burden is upon the moving party and he seeks to sustain it by the testimony of witnesses, a directed verdict will seldom be granted. When reasonable men may fairly differ on whether there is contributory negligence, a determination of the question is for the jury. Olguin v. Thygesen, supra; Hogsett v. Hanna, 41 N. M. 22, 63 P.2d 540; Caviness v. Driscoll Const. Co., 39 N.M. 441, 49 P.2d 251; Tiedebohl v. Springer, 55 N.M. 295, 232 P. 2d 694; Crespin v. Albuquerque Gas & Electric Co., 39 N.M. 473, 50 P.2d 259, 261. In the Crespin case we said:

" '\* \* \* it is only when the facts of a given case are not in any event or in any view of the case susceptible to the inference of negligence sought to be deduced therefrom that the question of negligence becomes one of law for the sole consideration of the court rather than one of fact for the determination of the jury.' "

■ The author, at 38 Am.Jur., Negligence, Section 188, expresses what we conclude to ge the correct view:

"Care in avoiding injury implies that there is, or would be with all prudent persons, something to create a sense of danger. A plaintiff's knowledge of the physical characteristics of the offending instrumentality or condition does not, in itself, constitute contributory negligence. A voluntary exposure to a known danger is an essential element of contributory negli-

gence. Moreover, it is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence. * * *"

See, Melkusch v. Victor American Fuel Co., 21 N.M. 396, 155 P. 727; Biondi v. Central Coal & Coke Co., 320 Mo. 1130, 9 S.W.2d 596. In the latter case, the Missouri court held that the failure of a miner working under a rock to ascertain whether conditions were safe, did not constitute contributory negligence as a matter of law. Also, see City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264, 122 A.L.R. 637; Mercury Mining Co. v. Chambers, 193 Ark. 771, 102 S.W.2d 543; N. O. Nelson Mfg. Corporation v. Dickson, 114 Ind.App. 668, 53 N.E.2d 640; Philyaw v. Arundel Corporation, 4 Cir., 51 F.2d 183.

Moreover, an infant's conduct is not to be measured by the same yardstick as would apply to adults. An infant is held to the same degree of care for its protection as is reasonably to be expected of children of like maturity and capacity. Such was our holding in Archuleta v. Jacobs, supra, wherein we said:

"It is pointed out by the authorities generally that usually in the case of a child as in that of an adult, it becomes a question of fact for the jury whether such child in using the street and meeting automobile travel hazards exercises such care in protecting itself from injuries as can be reasonably expected on the part of one of its age, judgment and experience." (Citing authorities)

The rule recognized by the courts generally is found at 38 Am.Jur., Negligence, Section 204, as follows:

"There is a distinction between adults and children in respect of the attention given to the personal equation in determining contributory negligence. The rule for determining whether an adult exercised due care for his own safety sets up as a standard the care ordinarily exercised by persons of intelligence and discretion. As to the child plaintiff, however, the caution required is determined according to the maturity and capacity of the plaintiff under the particular circumstances of the case. The standard by which to measure the conduct of a child, as regards the question of contributory negligence, is that degree of care ordinarily exercised by children of the same age, capacity, discretion, knowledge, and experience, under the same or similar circumstances. * * However, it is said that a child is favored in determining contributory negligence, not so much on its lack of

knowledge, as upon its indiscretion, imprudence, lack·of judgment, and impulsiveness. \* \* \*"

The judgment will be reversed with directions to the trial court to enter an order reinstating the case upon its docket and proceed in a manner not inconsistent herewith.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COORS, JJ., concur.