## Gott v. Berea College, et al.

(Decided December 11, 1913).

## Appeal from Madison Circuit Court.

1. Schools—Rule Forbidding Students Entering Public Eating Houses. —A rule forbidding students entering public eating houses is a reasonable one and within the power of the college authorities to enact.

2. Damages—Performance of Lawful Act in Lawful Manner.—When a lawful act is performed in the proper manner, the party performing it is not liable for mere incidental consequences injuriously resulting from it to another.

3. Schools—Regulations College Authorities May Make.—College authorities stand in loco parentis concerning the physical and moral welfare and mental training of the pupils, and they may make any rule or regulation for the government or betterment of their pupils that a parent could for the same purpose.

4. Schools—May Prescribe Requirements for Admission of Students. —A college or university may prescribe requirements for admission and rules for the conduct of its students, and one who enters as a student impliedly agrees to conform to such rules of government.

J. A. SULLIVAN, S. MAYNOR WALLACE and JOHN NOLAND for appellant.

BURNAM & BURNAM for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The appellant, J. S. Gott, about the first of September, 1911, purchased and was conducting a restaurant in Berea, Kentucky, across the street from the premises of Berea College. A restaurant had been conducted in this same place for quite a long while by the party from

whom Gott purchased. For many years it has been the practice of the governing authorities of Berea College to distribute among the students at the beginning of each scholastic year a pamphlet entitled "Students' Manual," containing the rules and regulations of the college for the government of the student body. Subsection three of this manual under the heading "Forbidden Places," enjoined the students from entering any "place of ill repute, liquor saloons, gambling houses, etc."

During the 1911 summer vacation the faculty, pursuant to their usual practice of revising the rules, added another clause to this rule as to forbidden places, and the rule was announced to the student body at chapel exercises on the first day of the fall term which began September 11th. The new rule is as follows:

"(b) Eating houses and places of amusement in Berea, not controlled by the College, must not be entered by students on pain of immediate dismission. The institution provides for the recreation of its students, and ample accommodation for meals and refreshment, and cannot permit outside parties to solicit student patronage for gain."

Appellant's restaurant was located and conducted mainly for the profits arising from student patronage. During the first few days after the publication of this rule two or three students were expelled for its violation, so that the making of the rule, and its enforcement, had the effect of very materially injuring, if not absolutely ruining appellant's business because the students were afraid to further patronize it.

On the 20th day of September appellant instituted this action in equity, and procured a temporary restraining order and injunction against the enforcement of the rule above quoted, and charging that the college and its officers unlawfully and maliciously conspired to injure his business by adopting a rule forbidding students entering eating houses. For this he claimed damages in the sum of $500. By amended petitions, he alleged that in pursuance of such conspiracy the college officers had uttered slanderous remarks concerning him, and his business, and increased his prayer for damages to $2,000. The slanderous remarks were alleged to have been spoken at chapel, and other public exercises to the student body as a reason for the rule, and were to the effect that appellant was a boot-legger, and upon more than one occasion had been charged and convicted of

illegally selling whiskey. Berea College answered, and denied that any slanderous remarks had been made as to appellant, or that they had conspired maliciously, or otherwise, or that the rule adopted was either unlawful, or unreasonable. In the second paragraph the college affirmatively set forth that it is a private (incorporated) institution of learning, supported wholly by private donations, and its endowment, and such fees as it collects from students or parents of students who desire to become affiliated with said institution, and abide by, and conform to the rules and regulations provided by the governing authorities of the college for the conduct of the students; that every student upon entering said institution agrees upon pain of dismissal to conform to such rules and regulations as may be from time to time promulgated; that the institution aims to furnish an education to inexperienced country, mountain boys and girls of very little means at the lowest possible cost; that practically all of the students are from rural districts, and unused to the ways of even a village the size of Berea, and that they are of very limited means. It is further alleged that they have been compelled from time to time to pass rules tending to prevent students from wasting their time and money, and to keep them wholly occupied in study; that some of the rules prohibited the doing of things not in themselves wrong, or unlawful, but which the governing authorities have found, and believe detrimental to the best interest of the college, and the student body. For these reasons the rule in question was adopted, but they say at the time that they had no knowledge that the plaintiff owned, or was about to acquire a restaurant, and that the rule was in no way directed at the plaintiff. Upon motion the restraining order was dissolved, but on account of allegations charging slanderous remarks the lower court overruled demurrer to the petition. After filing of the answer, proof was heard, the case submitted, and tried by the court with the result that the petition was dismissed, and Gott appeals to this court.

Passing the question as to whether an ordinary action can be joined with an equitable action for restraining order, there being no objection to it in the lower court, it is sufficient to say that on the question of uttering the slanderous words issue was joined, and the case submitted to the court without the intervention of a jury,

and we are disposed to accept its finding against Gott since it is supported by sufficient evidence.

The larger question, and the one we are called here to pass upon, is whether the rule forbidding students entering eating houses was a reasonable one, and within the power of the college authorities to enact, and the further question whether, in that event, appellant Gott, will be heard to complain. That the enforcement of the rule worked a great injury to Gott's restaurant business cannot well be denied, but unless he can show that the college authorities have been guilty of a breach of some legal duty which they owe to him, he has no cause of action against them for the injury. One has no right of action against a merchant for refusal to sell goods, nor will an action lie, unless such means are used as of themselves constitute a breach of legal duty, for inducing or causing persons not to trade, deal, or contract with another, and it is a well established principle that when a lawful act is performed in the proper manner, the party performing it is not liable for mere incidental consequences injuriously resulting from it to another. (38 Cyc., pp. 418-423.)

College authorities stand *in loco parentis* concerning the physical and moral welfare, and mental training of the pupils, and we are unable to see why to that end they may not make any rule or regulation for the government, or betterment of their pupils that a parent could for the same purpose. Whether the rules or regulations are wise, or their aims worthy, is a matter left solely to the discretion of the authorities, or parents as the case may be, and in the exercise of that discretion, the courts are not disposed to interfere, unless the rules and aims are unlawful, or against public policy. Section 881, of the Kentucky Statutes, applicable to corporations of this character, provides that they may "adopt such rules for their government and operation, not inconsistent with law, as the directors, trustees, or managers may deem proper." The corporate charter of Berea College empowers the board of trustees to "make such by-laws as it may deem necessary to promote the interest of the institution, not in violation of any laws of the State or the United States." This reference to the college powers shows that its authorities have a large discretion, and they are similar to the charter and corporate rights under which colleges and such institutions are generally conducted. Having

in mind such powers, the courts have without exception held to the rule which is well settled in 7 Cyc., 288.

"A college or university may prescribe requirements for admission and rules for the conduct of its students, and one who enters as a student impliedly agrees to conform to such rules of government."

The only limit upon this rule is as to institutions supported in whole, or in part, by appropriations from the public treasury. In such cases their rules are viewed somewhat more critically, but since this is a private institution it is unnecessary to notice further the distinction.

A further consideration of the power of school boards is found in Mechem on Public Officers, section 730, from which we quote:

"There is no question that the power of school authorities over pupils is not confined to school room or grounds, but to extend to all acts of pupils which are detrimental to the good order and best interest of the school, whether committed in school hours, or while the pupil is on his way to or from school, or after he has returned home."

Of course this rule is not intended to, nor will it be permitted to interfere with parental control of children in the home, unless the acts forbidden materially affect the conduct and discipline of the school.

There is nothing in the case to show that the college had any contract, business, or other direct relations with the appellant. They owed him no special duty, and while he may have suffered an injury, yet he does not show that the college is a wrong-doer in a legal or any sense. Nor does he show that in enacting the rules they did it unlawfully, or that they exceeded their power, or that there was any conspiracy to do anything unlawful. Their right to enact the rule comes within their charter provision, and that it was a reasonable rule cannot be very well disputed. Assuming that there were no other outside eating houses in Berea, and that there never had been a disorderly one, or one in which intoxicating liquors had been sold, still it would not be an unreasonable rule forbidding students entering or patronizing appellant's establishment. In the first place the college offers an education to the poorest, and undertakes to offer them the means of a livelihood within the institution while they are pursuing their studies, and at the same time provides board and lodging for a nominal charge. Whatever profit was derived, served to still

further reduce expenses charged against the pupil. It stands to reason that when the plans of the institution are so prepared, and the support and maintenance of the students are so ordered, that there must be the fullest co-operation on the part of all the students, otherwise there will be disappointment if not failure in the project. It is also a matter of common knowledge that one of the chief dreads of college authorities is the outbreak of an epidemic, and against which they should take the utmost precaution. These precautions, however, may wholly fail if students carelessly, or indiscriminately visit or patronize public or unsanitary eating houses. Too often those operating such places are ignorant of, or indifferent to even the simplest sanitary requirements. As a safeguard against disease infection from this source there is sufficient reason for the promulgation of the rule complained of. But even if it might be conceded that the rule was an unreasonable one, still appellant Gott is in no position to complain. He was not a student, nor is it shown that he had any children as students in the college. The rule was directed to and intended to control only the student body. For the purposes of this case the school, its officers and students are a legal entity, as much so as any family, and like a father may direct his children, those in charge of boarding schools are well within their rights and powers when they direct their students what to eat and where they may get it; where they may go and what forms of amusement are forbidden. A case very similar, and often quoted is that of People v. Wheaton College, 40 Ill., 186. It illustrates the principles here announced so well that we quote with approval the following from it:

"Wheaton College is an incorporated institution, resting upon private endowments, deriving no aid whatever from the State or from taxation. Its charter gives the trustees and faculty power to adopt and enforce such rules as may be deemed expedient in the government of the institution, a power which they would have possession 'without such express grant, because incident to the very object of their incorporation, and indispensable to the successful management of the college. Among the rules they have deemed it expedient to adopt is one forbidding students to become a member of secret societies. We perceive nothing unreasonable in the rule itself since all persons familiar with college life know that the tendency of secret societies

is to withdraw students to some extent from the control of the faculty and to impair the discipline of the institution. Such may not always be the effect, but such is their general tendency. But whether the rule be judicious or not, it violates neither good morals nor the laws of the land, and is, therefore, clearly within the power of the college authorities to make and enforce. A discretionary power has been given them to regulate the discipline of their college in such manner as they deem proper, and so long as their rules violate neither divine nor human law, we have no more authority to interfere than we have to control the domestic discipline of a father in his family. It is urged that the Good Templars are a society established for the promotion of temperance and incorporated by the Legislature and that any citizen has a right to join it. We do not doubt the beneficent object of the society and we admit that any citizen has the right to join it if the society consent. But this right is not of so high and solemn a character that it cannot be surrendered and the son of the relator did voluntarily surrender it when he became a, student of Wheaton College, for he knew, or must be taken to have known, that by the rules of the institution which he was voluntarily entering, he would be precluded from joining any secret society. When it is said that a person has a legal right to do certain things, all that the phrase means is that the law does not forbid these things being done. It does not mean that the law guarantees the right to do them at all times and under all possible circumstances. A person in his capacity as a citizen may have the right to do many things which a student at Wheaton College cannot do without incurring the penalty of college law. A person as a citizen has a legal right to marry or to walk the street at midnight or to board at a public hotel, yet it would be absurd to say that a college cannot forbid its students to do any of these things. So a citizen as such can attend church on Sunday or not as he may think proper, but it would hardly be contended that a college would not have the right to make attendance upon religious services a condition of remaining within its walls. The son of the relator has an undoubted legal right to join either Wheaton College or the Good Templars, and they have both the undoubted right to expel him if he refuses to abide by such regulations as they establish, not inconsistent with the law and good morals.''

There is no similarity between this and the case of the Standard Oil Co. v. Doyle, 118 Ky., 662, and many others of like import relied upon by appellant. These all relate to unlawful combinations and conspiracies between trading corporations or between individuals in trade, together with the use of unlawful, and fraudulent measures in restraint of trade, and to throttle competition. Of course trading corporations have no such wide latitude or discretion in the scope and character of rules and by-laws they may adopt or enforce in conducting their business. They are limited and controlled both by statute and common law. But the mere fact that one's trade has been restrained, as Gott's admittedly has, gives him no ground to invoke the law, unless the means used to restrain it have been malicious and wrongful. And as above indicated the proof shows neither malice nor wrong on the part of appellee.

Considering the whole case the judgment of the lower court is affirmed.