## Kirwan et al. v. Parkway Distillery, Inc., et al.

Feb. 18, 1941.

Crawford, Middleton, Milner & Seelbach for appellants.

Dodd & Dodd for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellants brought this action in the Jefferson circuit court seeking a judgment or decree of court requiring appellees to pay to appellants book value of their respective shares of stock which they owned in Bonnie Bros., a Kentucky corporation engaged in the whisky business, pursuant to an alleged sale of the property and assets of the corporation in accordance with Section 883b-3, Kentucky Statutes, rather than accept their proportionate share of the funds resulting from a dissolution of the corporation pursuant to Section 561, Kentucky Statutes. The facts out of which this litigation arises are these:

Prior to September 6, 1938, Bonnie Bros. entered into negotiations with Parkway Distillery, Inc., looking to a sale of the property and assets of Bonnie Bros. to Parkway Distillery, pursuant to Section 883b-3, Kentucky Statutes. Upon learning of the pending negotiations, appellants, who were minority stockholders in Bonnie Bros. corporation, objected to the sale and so notified Bonnie Bros. of their objections as provided in the statute, supra, but notwithstanding their objections, on September 6, 1938, Bonnie Bros. and Parkway Distillery agreed on the terms of the sale which were evidenced by written contract of that date.

It appears that after Bonnie Bros. learned of the objections of the appellants to the sale and that in the event of such sale they would demand book value for their stock, the holders or owners of the majority of the stock in Bonnie Bros. took steps to dissolve the corporation as provided in Section 561, Kentucky Statutes. The appellants thereafter in due course tendered their stock and stock certificates to Bonnie Bros. in an attempt to surrender the same for cancellation and obtain book value for same, in accordance with Section 883b-3 of the Statutes, but Bonnie Bros. refused to accept the surrender of the stock and to pay to appellants its book value. Appellants then demanded of Parkway Distillery that it pay to them the book value of their respective shares of stock as shown by the last statement of Bonnie Bros. which had been prepared as of December 31, 1937. It appears that the book value of the stock held by the four appellant minority stockholders, in the event of a sale of the assets of Bonnie Bros., aggregated the sum of $62,800 more than they would receive in the event of a dissolution of the corporation. At the beginning of the litigation Parkway Distillery paid into court the money representing the price of the stock as agreed on between it and Bonnie Bros. and it was agreed between all parties concerned that the funds so paid into court would be looked to instead of the personal responsibility of Parkway Distillery, as the purchaser.

The appellants, plaintiffs below, set out in their petition the facts in substance as stated above with reference to the negotiations for the sale of the assets of Bonnie Bros. and their objections thereto, before the contract of September 6, 1938, was entered into and, further alleged that pursuant to the contract Bonnie Bros. sold all of its assets to Parkway Distillery for the sum of $449,110.22. It is further alleged that Bonnie Bros., by and through its officers and agents, after the sale of its assets to Parkway Distillery, and in an attempt to destroy, nullify and defeat the rights of the plaintiffs as minority stockholders, undertook to and did obtain the consent of the holders of the majority of the capital stock of Bonnie Bros. to the dissolution and liquidation of Bonnie Bros. corporation and are now asserting a dissolution of the corporation pursuant to Section 561 of the Kentucky Statutes. Later by amended petition plaintiffs alleged, among other things, that cer-

tain majority stockholders in Bonnie Bros., as officers, directors and majority stockholders, negotiated for the sale of and did sell all the assets of Bonnie Bros. to the Parkway Distillery, and that Bonnie Bros. and Parkway Distillery connived and conspired together to place Bonnie Bros. corporation in dissolution for the sole, only and nefarious purpose of destroying and defeating the rights of the plaintiffs and thereafter did cause Bonnie Bros. corporation to be dissolved, all of which was a subterfuge and a means of avoiding the statute (Section 883b-3), and further alleged that their rights as minority stockholders pursuant to the provisions of Section 883b-3 of the Statutes were fixed by the sale of the assets prior to any dissolution of Bonnie Bros. corporation. The court sustained a demurrer to the petition as amended and dismissed same. This appeal results.

It will be noticed that certain allegations in the petition and amended petition might indicate a charge of fraud. However, in the brief of appellants, any claim or charge of fraud is specifically denied and they base their claim entirely on a vested right which they acquired pursuant to the contract of sale, or alleged sale, of the assets of Bonnie Bros. to Parkway Distillery, as provided in Section 883b-3 of the Statutes, and insist that such acquired or vested right cannot be defeated by the subsequent dissolution of the corporation. Section 883b-3, Kentucky Statutes, reads:

"No such sale shall be valid unless consented to by the holders of not less than three-fourths (¾) of the capital stock of the vendor corporation, which consent shall be given either in writing or by vote at a special meeting of the said stockholders called for that purpose upon the same notice as that required for the annual meetings of the corporation, which notice shall clearly state the purpose for which the meeting is called. Any stockholder of the vendor corporation may notify its secretary in writing on or before the date of such meeting that he objects to the proposed sale. If the proposed sales shall be consummated, the vendee, therein, thirty (30) days thereafter, upon the demand of such dissenting stockholder and upon his surrender of his stock therein to the vendor corporation for cancellation, shall pay to such dissenting stock-

holder the market value of his stock, which shall in no event be less than the book value of said stock, according to the last balance sheet of the selling corporation. Any amount so paid by the vendee to dissenting stockholders shall be deducted from the purchase price of the property in question."

It will be noticed that the statute, supra, provides that "If the proposed sale shall be consummated," the rights of the minority stockholders then may be asserted in the manner provided in the Statutes. Hence, the question with which we are confronted is whether or not the contract of sale between Bonnie Bros. and Parkway Distillery had been consummated or, stated differently, had all things been done necessary to invest Parkway Distillery with title to the assets of Bonnie Bros.

It must be admitted that if the sale had actually been consummated according to the provisions of the Statutes, supra, before the dissolution proceedings were had under Section 561, so as to vest title to the assets of Bonnie Bros. in Parkway Distillery, then appellants acquired a vested right to the book value of their stock pursuant to Section 883b-3 and such right could not be defeated by the subsequent proceedings had to dissolve the corporation.

There is a radical difference between a consummated or executed contract of sale, as distinguished from one still in its executory or unconsummated state. The manner of transferring title to property is too well known to require any argument or citation of authority. A contract to sell real estate is consummated or executed by execution of deed of conveyance by the seller and delivery of same to the buyer; and, a contract of sale of personal property is consummated or executed upon the delivery of possession by the seller to the buyer.

We find no allegation in the petition in reference to the execution and delivery of deeds to the real estate, if any was included in the contract of sale, nor do we find any allegation that Parkway Distillery was put in possession of the personal property. Following the allegations of the negotiations for and contract of sale, the word "sold" is used, which apparently is a conclusion or an assumption of the pleader that a complete agreement or contract of sale amounts to a fully executed or

consummated contract of sale and no further or additional steps are necessary to complete the bargain, or to the vesting of title. Since there is no allegation in reference to the execution and delivery of deeds, or delivery of possession of personal property to the buyer, considered in the light of the rule that a pleading will be construed more strongly against the pleader, we are impelled to the conclusion that the allegation of the petition and petition as amended show nothing more than a contract of sale still in its executory or unconsummated state rather than a consummated or executed contract so as to complete the sale by doing the things necessary to vest title to the assets of Bonnie Bros. in Parkway Distillery. It results, therefore, that since appellants had acquired no vested right pursuant to the contract of sale between Bonnie Bros. and Parkway Distillery, the stockholders in Bonnie Bros. had the right to change their minds and dissolve the corporation instead of carrying the contract through to complete execution or consummation.

It is claimed that the dissolution of Bonnie Bros. corporation subsequent to the contract of sale of its assets was done for the purpose of defeating appellants' rights to the book value of their stock which was more remunerative to them than their proportionate shares of the assets under a dissolution of the corporation. Conceding that to be true, yet the stockholders when voting strictly as stockholders were still within their legal rights. In the case of Haldeman v. Haldeman et al., 176 Ky. 635, 197 S. W. 376, it is pointed out that there is a radical difference when a stockholder is voting strictly as a stockholder and when voting as a director. When voting as a stockholder he has the legal right to vote with a view of his own benefits and is representing himself only; but, a director represents all the stockholders in the capacity of trustee for them and cannot use his office as director for his personal benefit at the expense of the stockholders. Also, in Windmuller v. Standard Distilling & Distributing Company, C. C., 114 F. 491, 495, it is said:

"A shareholder has a legal right, at a meeting of shareholders, to vote upon a measure, even though he has a personal interest therein separate from other shareholders.

"At such a meeting each shareholder repre-

sents himself and his own interest, and he in no sense acts as the representative of others.''

In such circumstances, as is pointed out in White v. Kincaid, 149 N. C. 415, 63 S. E. 109, 23 L. R. A., N. S., 1177, 128 Am. St. Rep. 663, the damage done to other stockholders is no invasion of the legal rights of another, and hence it is said to be damnum absque injuria. It is further said that in such case the motive prompting the act, however reprehensible or malicious, is not, as a rule, relevant to judicial inquiry; nor will courts undertake to interfere with the honest exercise of discretionary powers vested by statute in the management of a corporation, however unwise or improvident it may seem. See, also, Gott v. Berea College et al., 156 Ky. 376, 161 S. W. 204, 51 L. R. A., N. S., 17. Also, in J. H. Lane & Company v. Maple Cotton Mills, 4 Cir., 226 F. 692, 695, it is said:

''One who takes stock in a corporation in the state does so in the face of the statute, and takes his stock subject to that power of the majority. Judicial authority does not extend to enjoining the exercise of a right conferred by legislative authority. The courts cannot pass upon the question of expediency of dissolution and sale, for that is the very question which the Legislature has authorized the majority of the stockholders to decide.''

To the same effect is Dudley v. Kentucky High-School, 72 Ky. 576, 9 Bush 576. However, fraud may be an exception to these rules, but as we have already stated, no fraud is claimed or relied on in the case at bar.

It follows, therefore, that the court properly sustained the demurrer to appellants' petition.

Judgment affirmed.

Whole Court sitting, except Judge Perry.

Judge Tilford dissenting.