438 P.2d 531

**Joe NICHOLS, Plaintiff-Appellant,**

v.

**TEXICO CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS, a corporation, and Mart Koger, Defendants-Appellees.**

**No. 103.**

Court of Appeals of New Mexico.

Feb. 23, 1968.

Lorenzo A. Chavez, Melvin L. Robins, Albuquerque, for appellant.

Frank H. Allen, Jr., Kenneth L. Harrigan, Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for appellees.

OPINION

OMAN, Judge.

A prior appeal in this cause was dismissed because the judgment from which plaintiff sought to appeal was not appealable. Nichols v. Texico Conference Association, 78 N.M. 310, 430 P.2d 881 (1967).

At the conclusion of plaintiff's case upon the trial, the court directed a verdict for defendant, Texico Conference Association of Seventh Day Adventists. From judgment entered upon this verdict plaintiff has taken the present appeal.

The trial court directed the verdict for defendant upon the grounds that: (1) defendant owed no duty to plaintiff which was breached, and (2) plaintiff assumed the risk.

Since we hold the trial court correctly directed a verdict for defendant on. the ground of absence of duty owed by defend-

ant to plaintiff, we do not consider the question of assumption of risk.

The material facts are that defendant, Texico Conference Association of Seventh Day Adventists, operates a private boarding school for boys in New Mexico. As a part of its "philosophy of education" it undertakes to give the students an opportunity to work their way through school. However, there is no compulsion on a student to work.

Plaintiff entered the school during the summer of 1960. At that time he was fifteen years of age and was entering the ninth grade. His parents were unable to pay for his tuition, room and board, so he was to largely finance his education by working.

At that time the school operated a farm, a dairy and a broom factory, and later, while plaintiff was in attendance at the school, it also operated a furniture factory. Students were employed to work in all of these, as well as in the school's maintenance department.

Plaintiff's brother had attended the school, had worked at the dairy, and had told plaintiff of some of his experiences in the handling of the animals. Plaintiff chose to work at the dairy. After a short period of work on the farm, he was placed in the dairy where he continued to work until Saturday, May 26, 1962, when he sustained the injuries out of which this suit arises.

Except for a short period of time at the beginning of his work at the dairy, his job was that of milking cows by machine.

In about October or November of 1960, defendant brought a bull calf to the dairy. At that time the calf's horns were beginning to "sprout," but he was still quite small and was gentle.

On April 24, 1961, the school leased the dairy premises and buildings, the dairy herd, and the bull to a Mr. Koger, who had no connections with the school other than his rights and obligations under the lease agreement. He was highly recommended as one who knew cattle and the operation of a dairy. He was operating a dairy of his own at the time the lease was executed.

Under the lease, Koger agreed to use student labor exclusively. However, he could dismiss or discharge any student he wished. Plaintiff was given the opportunity to continue working at the dairy for Koger, and he elected to so do. From that day on, Koger directed and supervised his work, gave him orders concerning his work, and paid him for his work. Defendant and none of its personnel thereafter exercised or had any right to exercise any control or supervision over plaintiff's duties at the dairy, and had no possession of the bull.

After Koger began operation of the dairy under the lease agreement, the bull calf, as it grew, became mean and dangerous. Koger warned plaintiff that this bull was dangerous and plaintiff knew from his own observations and experiences around the dairy that this bull was mean, dangerous, unmanageable and unpredictable.

Plaintiff had no duties connected with the care, control or management of the bull. His job was that of milking cows.

On the evening of Thursday, May 24, 1962, Plaintiff discovered that the bull was not in the corral where Koger kept him, but was free and in the area of a silo and haystack at the dairy.

Plaintiff went to the home of the school's farm manager and borrowed a tractor for use in herding, or "pushing," the bull into the corral.

The next day he reached through an opening in the corral fence and attached a chain to a ring, which had some time prior thereto been placed in the bull's nose by a veterinarian. Plaintiff attached the chain to this ring because he understood this would tend to tame the bull.

After completing their milking duties on the morning of Saturday, May 26, plaintiff and another student set about to move the bull from the corral in which he was then enclosed into the corral in which he was normally kept by Koger. They proposed to do this by having plaintiff get hold of the

chain and pull, and by having the other student aid in some other way in getting the bull to move forward. They intended to accomplish the movement of the bull by remaining on the outside of the corral fence, which was about shoulder-high on the plaintiff. Plaintiff had never gone inside the same corral with the bull after he was grown, because, as he stated, "I knew it was dangerous."

Plaintiff reached over the fence and grabbed the end of the chain in both hands. He admittedly, at that moment, realized that what he was doing was dangerous and that he might be hurt by the bull. The chain was about two or three feet long, and as plaintiff grabbed it, he pulled. The bull threw his head upward and away from the fence. Plaintiff held on to the chain and was pulled over the fence and into the corral. The bull then gored him, causing the injuries about which he complains in this suit.

He admitted that at that time he was acting as an employee of Koger, and that he was performing no duties pertaining to his status as a student at the school.

Plaintiff contends defendant had the duty to supervise and instruct him in the manner of handling the bull. However, as already noted, he at no time had any duties which required him to handle the bull, and, after Koger took over the operation of the dairy under the lease, defendant had no control over the management or handling of the bull and no control over plaintiff in the performance of his duties as an employee of Koger.

Plaintiff relies upon the holdings in McMullen v. Ursuline Order of Sisters, 56 N.M. 570, 246 P.2d 1052 (1952); Suits v. Glover, 260 Ala. 449, 71 So.2d 49, 43 A.L.R. 2d 465 (1954); Ziegler v. Santa Cruz City High School District, 168 Cal.App.2d 277, 335 P.2d 709 (1959); O'Rourke v. Walker, 102 Conn. 130, 128 A. 25, 41 A.L.R. 1308 (1925); Miller v. Concordia Teacher's College, 296 F.2d 100 (8th Cir. 1961); Gott v. Berea College, 156 Ky. 376, 161 S.W. 204 (1913).

We agree with plaintiff that the trial court could properly direct a verdict for defendant only after reviewing the evidence in its most favorable aspect and after indulging all reasonable inferences and conclusions in support of plaintiff's case. Smith v. Loos, 78 N.M. 339, 431 P.2d 72 (Ct.App.1967); Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368 (1967); Loucks v. Albuquerque National Bank, 76 N.M. 735, 418 P.2d 191 (1966); Tevis v. McCrary, 75 N.M. 165, 402 P.2d 150 (1965). By viewing the evidence in this light and indulging in all such reasonable inferences, we are convinced that the trial court correctly directed the verdict for defendant.

In McMullen v. Ursuline Order of Sisters, supra, the directed verdict on the question of defendant's negligence was reversed, because plaintiff and four other students were permitted and directed to go to a shale mine to obtain shale for use in a school ground improvement program. The school made no effort to determine the safety of conditions at the mine, and gave no supervision over the mining operation.

In quoting from the annotator at 160 A. L.R. 229, the court stated as the basis of its holding that:

"* * * where a school district or other agency or authority is liable for the negligence of a teacher, *and a teacher, while acting within the scope of his authority or employment, orders or directs a pupil or student to perform a certain errand or task for the benefit of the teacher or the class,* whereby, because of the immaturity or inexperience of the pupil or student, * * * injuries to the latter or to a fellow pupil or student result therefrom, the teacher may be found to have been negligent so as to render the school district or other agency or authority liable therefor. * * *" (Emphasis added).

In the present case plaintiff was not ordered or directed by any one, and particularly, not by any one connected with defendant's school, to move the bull from one corral to another. Defendant had no authority at the time to direct or control the care and

movements of the bull, which had been under the care and control of Koger for some thirteen months. The intended movement by plaintiff of the bull from one corral to another on the day of the accident could have served no purpose of the school, and, as already stated, plaintiff admits that at the time he was performing no duties pertaining to his status as a student at the school.

The facts in the present case are not such as to bring defendant within the realm of culpability under the principles announced in McMullen v. Ursuline Order of Sisters, supra. Nor are the principles announced in the other cases relied upon by plaintiff such as to impose upon defendant a duty to protect plaintiff from the harm or injury which he sustained.

Suits v. Glover, supra, was a suit for damages by a school boy against his teacher for damages allegedly sustained from a paddling. The legal questions involved, relating to the rights and duties of a teacher in administering correction to a student, were the degree or extent of chastisement which may lawfully be administered, the means or instrument which might properly be used, and the motives which prompt the punishment. These are not questions with which we are here concerned.

Ziegler v. Santa Cruz City High School District, supra, involved a claim for the alleged wrongful death of a thirteen-year old student resulting from his fall over a railing and into a stairwell. A judgment of nonsuit in favor of defendant was reversed because there was sufficient evidence to raise a jury question as to whether or not proper supervision would have prevented decedent from sitting on the rail and would reasonably have prevented the fall.

The question of liability, under the facts there presented, was predicated upon the duty of school authorities to at all times exercise ordinary care in the supervision of the conduct of children while properly on the school grounds in connection with school activities. This duty of supervision, which may be established by statute or by rules and regulations, relates to the conduct of students during school hours, or while they are otherwise under the control and direction of the school authorities. Rodriguez v. San Jose Unified School District, 157 Cal.App.2d 842, 322 P.2d 70 (1958); 160 A. L.R. 7, 145; 86 A.L.R.2d 489, 554. In our case the accident occurred on a Saturday, away from the school premises proper, and while plaintiff was not acting under any control or direction of defendant.

O'Rourke v. Walker, supra, was a suit by a student against the school principal for a battery. The legal question involved was that of the right of the principal to inflict light corporal punishment in a moderate manner upon the student for conduct outside the school hours and away from school property. It was held that "if the conduct punished is detrimental to the best interests of the school, it is punishable." However, it does not follow from the right of the school to impose punishment upon a student for conduct outside of school hours and away from school property, when such conduct is detrimental to the best interests of the school, that the school has the obligation or duty, for the protection of its students, to supervise all activities of its students outside of school hours and away from the school premises.

The case of Miller v. Concordia Teacher's College, supra, does not support plaintiff. The most that can be said for the holding in that case is that under Nebraska law the college had the duty of providing a student, who was required to stay in a college dormitory, with a safe place for lodging.

Gott v. Berea College, supra, simply held that a private college, standing in loco parentis concerning the physical and moral welfare and mental training of its students, has the power and authority to prescribe rules for the conduct of its students, that these rules need not be confined to conduct in the school room or on the school grounds, and that a student who enters such a college as a student impliedly agrees to conform to such rules of government.

This right to impose rules for the conduct and government of students does not impose a duty of responsibility for protective supervision of its students at all places and under all circumstances.

Just because plaintiff was a student at defendant's boarding school and defendant had assisted plaintiff in securing employment by Koger, no duty was thereby placed on defendant to supervise and instruct plaintiff in the manner in which the bull here involved should be handled.

We observe that it has not been suggested to us what supervision or what instruction would have averted the accident, short of perhaps the actual presence of someone to forbid and prevent plaintiff from undertaking to do that which he had no duty to do, but which he voluntarily undertook to accomplish, fully realizing he was endangering himself.

The judgment should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.