Allison **BRYANT**, a minor, by Tom Bryant and Irene Bryant, as parents, natural guardians and next friends, Johnny High and Marvin High, minors, by Annie High, as parent, natural guardian and next friend, Plaintiffs-Appellees,

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 76–1482.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 2, 1977.

Decided Nov. 11, 1977.

Charles N. Estes, Jr., Asst. U. S. Atty., Washington, D. C. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., with him on the brief), for defendant-appellant.

Eugene E. Klecan, of Klecan & Roach, P.A., Albuquerque, N. M., for plaintiffs-appellees.

Before SETH, HOLLOWAY and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This case was brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to recover damages against the United States for alleged negligence in the operation of a boarding school administered by the Bureau of Indian Affairs on the Navajo Indian Reservation in New Mexico. Appellees

were students at the school who were injured after running away from the campus. The United States appeals from a judgment awarding damages against the United States in the amount of $300,000.00 for each of the three appellees.

The questions presented are: (1) did the United States exercise ordinary care in its method of supervision of the students on the boarding school grounds; (2) was the exercise of a discretionary function involved in recovery under the Federal Tort Claims Act, 28 U.S.C. § 2680(a); and (3) was the failure to supervise on the school grounds the legal cause of the appellees' injuries.

Appellees, plaintiffs in the case below, were three Navajo Indian boys aged seven and a half, eight, and ten and a half years at the time of the incident complained of. During the school year, appellees were enrolled at the Chuska School, a boarding school administered by the Bureau of Indian Affairs (BIA). On January 8th, the three boys ran away from school after classes and attempted to make their way home through the mountains. A snowstorm began during the evening and the three boys were trapped in the mountains. By the time they were found, four days later, they had sustained frostbite to their legs. The doctors at the Public Health Service Indian Hospital at Gallup, New Mexico, subsequently had to amputate the legs of each appellee.

The supervision system at the school involved about nine head checks during the day to determine the children's whereabouts. Different members of the school's dormitory staff were to have supervisory responsibility for the children depending on whether or not the children were attending school or had been released from class. The children were to be supervised by their teachers during school hours and by the dormitory and counseling staff during non-school hours. After being dismissed from class at approximately 3:30 p. m., the children were supposed to cross the school yard to their dormitories and check in with the instructional aide on duty. The distance from the classrooms to the dormitories was 100 to 200 yards. The instructional aides kept a list of the students assigned to their dormitory wing and the dormitory roll call or head check was to be completed by 4:00 p. m. The record suggests that the children were free to play on the playground before the 4:00 p. m. head check; however, there is conflicting evidence as to whether they were supposed to.

All three of the appellees lived in Wing B of dormitory 5 on the Chuska campus. The records of dormitory supervisory personnel on duty between the hours of 3:00 p. m. and 4:00 p. m. on the day in question revealed one person assigned to Wing B at the time the three boys ran away. On the afternoon of January 8th, appellee Allison Bryant, the oldest of the three boys, was dismissed by his teacher at approximately 3:40 p. m. Classes were normally dismissed at 3:30, but Allison's class had been kept late to finish an assignment. The evidence suggested and the district court found that after leaving the classroom building, the three boys "came in and out the back door of the dormitory, and from there, they left and ran away." The boys apparently climbed over the wire fence located a short distance behind their dormitory, and went into a wash which runs near the north side of the campus. The boys' disappearance was noted by 4:00 p. m. and a search was begun immediately, but was unsuccessful.

These events took place in New Mexico, and in New Mexico school authorities have the duty to exercise ordinary care in protecting and supervising students while they are on school grounds. *McMullen v. Ursuline Order of Sisters*, 56 N.M. 570, 246 P.2d 1052; *Archuleta v. Jacobs*, 43 N.M. 425, 94 P.2d 706. However, school authorities do not have responsibility for protective supervision at all places and under all circumstances. *Nichols v. Texico Conf. Ass'n of Seventh Day Adventists*, 78 N.M. 787, 438 P.2d 531 (Ct.App.).

The appellees in this case were young children at a boarding school. The age of a child, its ability to look out for itself, and capacity to appreciate dangers

are proper matters for consideration in determining whether proper care has been exercised as to such child. Conduct that might easily qualify as ordinary and prudent care to a child of one age, and with capacity to understand and appreciate danger, might easily fall short of such classification with reference to a child of more tender years and of less understanding and appreciation of danger. *Archuleta v. Jacobs*, 43 N.M. 425, 94 P.2d 706.

The standard of care is also measured under "the circumstances." Thus it was necessary to consider the boarding school circumstances with young children accustomed to close family ties. The boarding school runaway "problem" is described in the record. Four to six boys had run away the preceding month, and the average was about ten runaways each semester at the Chuska school and similar schools.

The Government argues that reasonable procedures for supervision of students were in effect when the appellees ran away. Conflicting evidence was presented on the issue of whose responsibility it was to supervise the children between the dismissal of school at 3:30 p. m. and the dormitory head check at 4:00 p. m. Mr. Magneson, the school superintendent for the school district in which Chuska school was located, testified that it was the responsibility of the instructional aide assigned to the dormitory to supervise inside and outside the dormitory during this period. Mr. Pahe, the principal of Chuska school, testified that it was in the job description of the instructional aides that they should supervise the children inside and outside between the hours of 3:30 p. m. and 5:00 p. m. The trial court obviously accepted this view. Evidence was presented that the period from 3:30 to 4:00 p. m. was a critical time for supervision, and also was a peak period for runaways.

■ The trial court found that " . . . as a result of a misunderstanding among the school authorities, there was no supervision, at all, on the school grounds during the period from 3:30 p. m. to 4:00 p. m. on January 8 . . . ." From the evidence it is apparent that a fact question arose as to whether the BIA exercised ordinary care in supervising the children. The trier of fact found that the BIA breached its duty to provide reasonable supervision. The record supports this finding.

The Government contends that the decision not to station supervisory personnel on the playgrounds was an exercise of a discretionary function, thus barring recovery under the Federal Tort Claims Act exception in 28 U.S.C. § 2680(a). The United States on this point presented evidence at trial that BIA boarding schools of this type had once been run in a highly militaristic fashion with the children marched in groups between the various points of the campus. Such rigid practices had been relaxed at the Chuska school as part of a deliberate effort to make the atmosphere of the school open and encourage individual responsibility in the students. As mentioned earlier, the school instituted instead a system of periodic head checks to ensure that the children's whereabouts were regularly checked. The Government argues that the decision to make these changes was a discretionary judgment made by the BIA officials which comes under the rule in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

■ It appears from the record that indeed the after-school supervisory system was changed at the Chuska school. This may or may not have constituted an exercise of the discretionary function. However, the negligence found was a result of a failure under the new system of the dormitory personnel to properly carry out their duties to supervise *outside*. The doctrine or exemption of a discretionary function thus does not come into play at all as the new system itself was not the cause as it acknowledged the need for outside supervision.

■ The Government argues that if there was a failure to supervise the school grounds after the dismissal of school, this was not the proximate cause of the injuries suffered by the appellees. In New Mexico, as is universally the case, negligence re-

654

quires not only that the defendant be negligent, but that the negligence be a proximate cause of the injury complained of. *Castillo v. United States*, 552 F.2d 1385 (10th Cir.); *Hernandez v. Southern Union Gas Co.*, 209 F.2d 606 (10th Cir.); *Lopez v. Maes*, 81 N.M. 693, 472 P.2d 658. Proximate cause has been defined by the New Mexico courts as "that which, in a natural or continuous sequence, produces the injury and without which the injury would not have occurred." *Galvan v. City of Albuquerque*, 85 N.M. 42, 508 P.2d 1339; *Chavira v. Carnahan*, 77 N.M. 467, 423 P.2d 988. The act in question need not be the sole cause of the injury but it is sufficient if it is a concurring cause. *Castillo, supra; Galvan, supra; Kelly v. Montoya*, 81 N.M. 591, 470 P.2d 563. In New Mexico, when reasonable minds may differ on the question of proximate cause, the matter is to be determined by the fact finder. *Griego v. Marquez*, 89 N.M. 11, 546 P.2d 859; *Galvan, supra; Fitzgerald v. Valdez*, 77 N.M. 769, 427 P.2d 655; *Hernandez, supra.*

The trial court made the factual determination as to proximate cause, and it is supported by the record.

AFFIRMED.