744 P.2d 919

Frankie **RUBIO**, a minor, By and Through his next friend, his mother, Irene **RUBIO**; Irene Rubio, individually; Dennis Tanner, a minor, By and Through his next friend, his mother, Mary Tanner; Mary Tanner, individually; Charles Harris, Jr., a minor, By and Through his next friend, his mother, Connie Harris; and Connie Harris, individually, **Plaintiffs–Appellants**,

v.

**CARLSBAD MUNICIPAL SCHOOL DISTRICT, a local public body, Defendant–Appellee.**

No. 9646.

Court of Appeals of New Mexico.

Oct. 6, 1987.

James W. Klipstine, Jr., Klipstine & Hanratty, P.C., Carlsbad, for plaintiffs-appellants.

Richard E. Olson, James M. Hudson, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for defendant-appellee.

## OPINION

BIVINS, Judge.

Plaintiffs, who are the parents of three students in the Carlsbad school system, seek damages on their own behalf and on behalf of their respective minor children based on misconduct of a teacher. They allege, and we must accept as true for the purposes of review, that a teacher "while employed * * * by the Carlsbad Schools, obtained marijuana for these students. He also assisted in and allowed the use of the drug during the time he was obligated to teach and supervise these students." Plaintiffs sued the Carlsbad Municipal School District in this action, but not the teacher.

The complaint seeks damages under four theories: count one alleges negligence by defendant in the hiring and retention of the teacher; count two alleges educational malpractice; count three asserts breach of contract; and count four claims violation of constitutional rights. The trial court granted defendant's motion to dismiss the complaint, and in a subsequent order awarded defendant attorney fees incurred in defending the civil rights claim. From those orders plaintiffs appeal.

Plaintiffs raise five issues:

1. Whether immunity under the New Mexico Tort Claims Act is waived as to the negligence claims.

2. Whether New Mexico recognizes causes of action for negligent hiring and retention and for educational malpractice.

3. Whether the constitutional and statutory provisions for free public education give rise to a contractual relationship for which breach of contract may lie.

4. Whether plaintiffs state a cause of action under 42 U.S.C. Section 1983 (1982) for breach of constitutional rights.

5. Whether the trial court erred in awarding defendant attorney fees under 42 U.S.C. Section 1988 (1982).

We answer these questions by holding, first, that immunity has not been waived under the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl.1986), and, therefore, plaintiffs state no cause of action for either negligent hiring and retention or educational malpractice. Second, the right and privilege to a free public education does not give rise to a contractual relationship for which an individual may sue for breach of contract. Third, we hold that plaintiffs' 42 U.S.C. Section 1983 action fails because there is no allegation that defendant, by policy or custom, sanctioned the teacher's conduct. Finally, the award of 42 U.S.C. Section 1988 attorney fees to defendant is authorized since defendant prevailed on the 42 U.S.C. Section 1983 claim and such claim could be found "frivolous, unreasonable or groundless." Accordingly, we affirm the dismissal of plaintiffs' complaint and the award of attorney fees to defendant.

Where the trial court dismisses for failure to state a claim upon which relief can be granted under SCRA 1986, 1–012(B)(6), we accept as true all well-pleaded facts. *Trujillo v. Puro*, 101 N.M. 408, 683 P.2d 963 (Ct.App.1984). The purpose of Rule 1–012(B)(6) is to test the legal sufficiency of the complaint, not the facts upon which it relies. *Id.* With the stated standard in mind, we first examine the dismissal of plaintiffs' several claims for relief.

### 1. The Negligence Claims

■ Under this point, we discuss the first two issues raised, because if immunity has not been waived, it would not matter if underlying causes of action for negligent hiring and retention and educational malpractice might otherwise be available.

These negligence claims were necessarily brought pursuant to the Tort Claims Act. Section 41–4–4(A) provides:

A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41–4–5 through 41–4–12 NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of Sections 41–4–13 through 41–4–25 NMSA 1978.

Plaintiffs do not rely on any of the express waivers under Sections 41–4–5 to –12 as prescribed; they urge us to find that immunity has been waived under Section 41–4–21, which states: "The provisions of the Tort Claims Act * * * shall not affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-employee relationship."

Relying on Section 41–4–21 as a general exception to immunity, plaintiffs then attempt to incorporate provisions of the Certified School Personnel Act, NMSA 1978, Sections 22–10–1 to –26 (Repl.1986 & Supp. 1987), as a basis for waiver of immunity. *See* specifically Section 22–10–5 (prescribing duties for certified school personnel) and Section 22–10–3 (prescribing certificate requirements).

Plaintiffs' argument fails for two reasons. First, Section 41–4–4(A) clearly states immunity from liability exists except as waived under Sections 41–4–5 to –12. Since plaintiffs do not claim a waiver under any of those sections, immunity from liability is preserved. "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act." Section 41–4–2(A). Section 41–4–21 does not provide a waiver of immunity and, therefore, furnishes no basis for suing defendant. *Pemberton v. Cordova*, 105 N.M. 476, 734 P.2d 254 (Ct.App. 1987).

Second, it is likewise clear under Section 41–4–4(A) that if a waiver of immunity does exist, that waiver is subject to certain limitations. These are found in Sections 41–4–12 to –25 and include, among other limitations, the right of governmental entities and their employees to assert any available defenses, Section 41–4–14; the requirement that claims be commenced within a prescribed period of time so as to avoid a bar, Section 41–4–15; the requirement of giving timely written notice, Section 41–4–16; the restrictions on the amounts that may be recovered, Section 41–4–19; and provisions for coverage of risks, Section 41–4–20.

Section 41–4–21, upon which plaintiffs rely, is found among those limitations. Read in context, it simply means that if a waiver of immunity exists that would entitle an injured party to bring a claim, the Tort Claims Act shall not affect personnel acts, rules or regulations, or other provisions of law governing the employer-employee relationship. That section was designed to preserve employment relations, not to provide a waiver of immunity. Where the language of a statute is plain, it must be given effect. *State v. Ortiz,* 78 N.M. 507, 433 P.2d 92 (Ct.App.1967).

Plaintiffs cite cases they claim lend support for their claims of negligence against defendant. All are distinguishable. *McMullen v. Ursuline Order of Sisters,* 56 N.M. 570, 246 P.2d 1052 (1952) and *Nichols v. Texico Conference Association of Seventh Day Adventists,* 78 N.M. 787, 438 P.2d 531 (Ct.App.1968) involved suits against private schools, not a public school. *Bryant v. United States,* 565 F.2d 650 (10th Cir.1977) was brought under the Federal Tort Claims Act and involved a boarding school operated by the Bureau of Indian Affairs. *Archuleta v. Jacobs,* 43 N.M. 425, 94 P.2d 706 (1939) and *Maxwell v. Santa Fe Public Schools,* 87 N.M. 383, 534 P.2d 307 (Ct.App.1975), although involving governmental entities, were decided prior to the Tort Claims Act.

While conceding that a majority of jurisdictions considering the question has rejected a claim for educational malpractice, *see*

Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Educational Malpractice,* 1 A.L.R.4th 1139 (1980), plaintiffs nevertheless urge this court to recognize one. We decline. Educational malpractice against a public school board, if it exists, is a form of negligence and the courts of this state would have no jurisdiction over the claim unless there was a waiver of immunity. None exists.

The trial court correctly dismissed plaintiffs' claims sounding in negligence.

**2. The Contract Claim**

■ Under this point, plaintiffs claim that sections of the New Mexico Constitution and statutes that establish a uniform system of free public schools, require compulsory attendance and provide funding give rise to a contractual relationship for which parents and students may seek relief in the event of a breach. *See* N.M. Const. art. XII, §§ 1 and 5; NMSA 1978, §§ 22–12–2 and –4 (Repl.1986); §§ 22–8–1 to –42 (Repl.1986 & Supp.1987). They argue that "[v]iewed in the most fundamental concepts of contract, the citizens of the State of New Mexico have agreed to give up their money in consideration of the services to be rendered in the form of an adequate public education."

Plaintiffs' point is without merit. First, they cite no authority to support their argument other than references to the writings of John Locke and Thomas Hobbes (J. Locke, *Two Treatises of Government* (1690); T. Hobbes, *Leviathan,* (1651)). We do not view the "social contract" expounded by these early thinkers to translate into a legally-enforceable contract between a government and its citizens.

Second, the fact that citizens pay taxes, which in part finances public education, does not create a contractual relationship. Many pay taxes but have no children, or have children who attend private schools.

**3. The Civil Rights Claim**

■ 42 U.S.C. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The United States Supreme Court has held that

in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In their complaint, plaintiffs allege:

21. Defendant under the color of its position as a governmental body of the State of New Mexico has deprived these plaintiffs of rights secured to them under the Constitution of the United States and the several laws enacted thereunder. An adequate public school education is the basic right of all citizens and once Defendant undertook to provide an educational opportunity that right must be made equally available to all citizens.

This claim, too, must fail. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) held that a local governing body cannot be held liable under 42 U.S.C. Section 1983 on a respondeat superior theory. Thus, defendant school district could not be liable for the actions of its employee, the teacher, based on their relationship. There must be more. To render defendant liable for monetary damages under 42 U.S.C. Section 1983, the action alleged to be unconstitutional must implement or execute a policy statement, regulation or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, defendant, like every other 42 U.S.C. Section 1983 "person," could be sued for constitutional deprivations brought about by governmental custom, even though such custom has not received formal approval through the defendant's official decision-making channels. *Id.; see also Rowland v. Mad River Local School Dist., Montgomery County, Ohio*, 730 F.2d 444 (6th Cir.1984). Here, there is no allegation that defendant, through either custom or policy, ever sanctioned the distribution of marijuana to its students.

Having so concluded, we need not reach other arguments advanced, including whether plaintiffs have a protected right to a public education under the Constitution, or whether negligence may deprive an individual of life, liberty or property under the fourteenth amendment. *See Daniels v. Williams; Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

### 4. Attorney Fees

The trial court awarded defendant attorney fees pursuant to 42 U.S.C. Section 1988, finding that plaintiffs' suit was "frivolous, groundless, unreasonable and without merit." It awarded $3,975.59, but gave credit for $1,500 already paid by plaintiffs pursuant to an order by the United States District Court for the District of New Mexico, leaving a balance of $2,479.50.

Plaintiffs do not challenge the amount, only the authority to award. They claim that their action, even if dismissed, was not totally without merit.

Although a prevailing plaintiff in a civil rights action is ordinarily entitled to an award of attorney fees in all but special circumstances, a prevailing defendant is to be awarded such fees only when the court, in the exercise of its discretion, has found

that plaintiff's action was frivolous, unreasonable or without foundation. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (although *Christiansburg* dealt with 42 U.S.C. Sections 2000e to 2000e–5(k) (1982), a different section pertaining to civil rights, the language of 42 U.S.C. Sections 1988 and 2000e are virtually identical as to attorney fees). Here, the trial court made such a finding. Did it abuse its discretion?

In light of the fact that plaintiffs ignored the requirements of *Monell v. Department of Social Services* and the holdings of *Daniels v. Williams* and *Davidson v. Cannon* (decided before the filing of their action), that mere negligent conduct does not implicate the Due Process Clause of the fourteenth amendment, we are unable to say there was an abuse of discretion. A minimum amount of research would have disclosed these decisions and made clear that plaintiffs did not have a 42 U.S.C. Section 1983 claim. Curiously, in their brief, plaintiffs rely heavily on *Flores v. Edinburg Consolidated Independent School District*, 554 F.Supp. 974 (S.D.Tex. 1983), a case which held that negligent conduct was sufficient to state a 42 U.S.C. Section 1983 claim. *Flores*, in turn, relied on *Parratt v. Taylor*, which was expressly overruled in *Daniels v. Williams*, to the extent *Parratt* states that mere lack of due care by a state official may "deprive" an individual of life, liberty or property under the fourteenth amendment.

The order of dismissal and the order awarding attorney fees are affirmed. We express no opinion as to whether plaintiffs may have a cause of action against the teacher. Plaintiffs shall pay the costs of appeal. Oral argument is unnecessary. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

IT IS SO ORDERED.

DONNELLY, C.J., and ALARID, J., concur.